# TAYLOR *v.* UNITED STATES

No. 88–7194.   Argued February 28, 1990—Decided May 29, 1990

576

BLACKMUN, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, MARSHALL, STEVENS, O'CONNOR, and KENNEDY, JJ., joined, and in all but Part II of which SCALIA, J., joined. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 603.

*Bruce Dayton Livingston*, by appointment of the Court, 493 U. S. 952, argued the cause for petitioner. With him on the briefs was *J. Bennett Clark*.

*Michael R. Lazerwitz* argued the cause for the United States. With him on the brief were *Solicitor General Starr, Deputy Solicitor General Bryson, Assistant Attorney General Dennis*, and *Andrew Levchuk.**

JUSTICE BLACKMUN delivered the opinion of the Court.

In this case we are called upon to determine the meaning of the word "burglary" as it is used in § 1402 of Subtitle I (the Career Criminals Amendment Act of 1986) of the Anti-Drug Abuse Act of 1986, 18 U. S. C. § 924(e). This statute provides a sentence enhancement for a defendant who is convicted under 18 U. S. C. § 922(g) (unlawful possession of a

---

**Burton H. Shostak* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging reversal.

firearm) and who has three prior convictions for specified types of offenses, including "burglary."

I

Under 18 U. S. C. § 922(g)(1), it is unlawful for a person who has been convicted previously for a felony to possess a firearm. A defendant convicted for a violation of § 922(g)(1) is subject to the sentence-enhancement provision at issue, § 924(e):

> "(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both . . . such person shall be fined not more than $25,000 and imprisoned not less than fifteen years . . . .
>
> "(2) As used in this subsection—
>
> .         .         .         .         .
>
> "(B) the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

In January 1988, in the United States District Court for the Eastern District of Missouri, petitioner Arthur Lajuane Taylor pleaded guilty to one count of possession of a firearm by a convicted felon, in violation of § 922(g)(1). At the time of his plea, Taylor had four prior convictions. One was for robbery, one was for assault, and the other two were for second-degree burglary under Missouri law.[1]

---

[1] Taylor's burglary convictions were in Missouri state courts in 1963 and 1971. In those years, Missouri had seven different statutes under which one could be charged with second-degree burglary. All seven offenses required entry into a structure, but they varied as to the type of structure

The Government sought sentence enhancement under § 924(e). Taylor conceded that his robbery and assault convictions properly could be counted as two of the three prior convictions required for enhancement, because they involved the use of physical force against persons, under § 924(e)(2)(B)(i). Taylor contended, however, that his burglary convictions should not count for enhancement, because they did not involve "conduct that presents a serious potential risk of physical injury to another," under § 924(e)(2)(B)(ii). His guilty plea was conditioned on the right to appeal this issue. The District Court, pursuant to § 924(e)(1), sentenced Taylor to 15 years' imprisonment without possibility of parole.

The United States Court of Appeals for the Eighth Circuit, by a divided vote, affirmed Taylor's sentence. It ruled that, because the word "burglary" in § 924(e)(2)(B)(ii) "means 'burglary' however a state chooses to define it," the District Court did not err in using Taylor's Missouri convictions for second-degree burglary to enhance his sentence. 864 F. 2d 625, 627 (1989). The majority relied on their court's earlier decision in *United States* v. *Portwood,* 857 F. 2d 1221 (1988), cert. denied, 490 U. S. 1069 (1989). We granted certiorari, 493 U. S. 889 (1989), to resolve a conflict among the Courts of

---

and the means of entry involved. See Mo. Rev. Stat. § 560.045 (1969) (breaking and entering a dwelling house); § 560.050 (having entered a dwelling house, breaking out of it); §§ 560.055 and 560.060 (breaking an inner door); § 560.070 (breaking and entering a building, booth, tent, boat, or railroad car); § 560.075 (breaking and entering a bank); and § 560.080 (breaking and entering a vacant building).

In 1979, all these statutes were replaced with Mo. Rev. Stat. § 569.170 (1986), which provides that a person commits second-degree burglary "when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein."

The formal Notice of Punishment Enhancement submitted to the District Court in this case did not reveal which of the seven earlier Missouri statutes were the bases for Taylor's convictions; it stated only that he was convicted of burglary in the second degree. App. 6–7.

Appeals concerning the definition of burglary for purposes of § 924(e).[2]

The word "burglary" has not been given a single accepted meaning by the state courts; the criminal codes of the States define burglary in many different ways. See *United States* v. *Hill*, 863 F. 2d 1575, 1582, and n. 5 (CA11 1989) (surveying a number of burglary statutes). On the face of the federal enhancement provision, it is not readily apparent whether Congress intended "burglary" to mean whatever the State of the defendant's prior conviction defines as burglary, or whether it intended that some uniform definition of burglary be applied to all cases in which the Government seeks a § 924(e) enhancement. And if Congress intended that a uniform definition of burglary be applied, was that definition to be the traditional common-law definition,[3] or one of the broader "generic" definitions articulated in the Model Penal Code and in a predecessor statute to § 924(e), or some other definition specifically tailored to the purposes of the enhancement statute?

---

[2] See, *e. g.*, *United States* v. *Leonard*, 868 F. 2d 1393 (CA5 1989) (burglary defined according to state law); 864 F. 2d 625 (CA8 1989) (this case— same); *United States* v. *Chatman*, 869 F. 2d 525 (CA9 1989) (common-law definition of burglary); *United States* v. *Headspeth*, 852 F. 2d 753 (CA4 1988) (same); *United States* v. *Palmer*, 871 F. 2d 1202 (CA3), cert. denied, 493 U. S. 890 (1989) (burglary means any offense that would have met the definition of burglary under a predecessor statute to § 924(e)); *United States* v. *Taylor*, 882 F. 2d 1018 (CA6 1989) (same); *United States* v. *Dombrowski*, 877 F. 2d 520 (CA7 1989) (same); *United States* v. *Hill*, 863 F. 2d 1575 (CA11 1989) (same); and *United States* v. *Patterson*, 882 F. 2d 595 (CA1 1989) (case-by-case inquiry whether the crime defined by state statute involves conduct that presents a serious potential risk of injury to another).

[3] "Burglary was defined by the common law to be the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony." W. LaFave & A. Scott, Substantive Criminal Law § 8.13, p. 464 (1986) (LaFave & Scott). See 4 W. Blackstone, Commentaries *224.

## II

Before examining these possibilities, we think it helpful to review the background of § 924(e). Six years ago, Congress enacted the first version of the sentence-enhancement provision. Under the Armed Career Criminal Act of 1984, Pub. L. 98–473, ch. 18, 98 Stat. 2185, 18 U. S. C. App. § 1202(a) (1982 ed., Supp. III) (repealed in 1986 by Pub. L. 99–308, § 104(b), 100 Stat. 459), any convicted felon found guilty of possession of a firearm, who had three previous convictions "for robbery or burglary," was to receive a mandatory minimum sentence of imprisonment for 15 years. Burglary was defined in the statute itself as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." § 1202(c)(9).

The Act was intended to supplement the States' law enforcement efforts against "career" criminals. The House Report accompanying the Act explained that a "large percentage" of crimes of theft and violence "are committed by a very small percentage of repeat offenders," and that robbery and burglary are the crimes most frequently committed by these career criminals. H. R. Rep. No. 98–1073, pp. 1, 3 (1984) (H. Rep.); see also S. Rep. No. 98–190, p. 5 (1983) (S. Rep.). The House Report quoted the sponsor of the legislation, Senator Specter, who found burglary one of the "most damaging crimes to society" because it involves "invasion of [victims'] homes or workplaces, violation of their privacy, and loss of their most personal and valued possessions." H. Rep., at 3. Similarly, the Senate Report stated that burglary was included because it is one of "the most common violent street crimes," and "[w]hile burglary is sometimes viewed as a non-violent crime, its character can change rapidly, depending on the fortuitous presence of the occupants of the home when the burglar enters, or their arrival while he is still on the premises." S. Rep., at 4–5.

The only explanation of why Congress chose the specific definition of burglary included in § 1202 appears in the Senate Report:

"Because of the wide variation among states and localities in the ways that offenses are labeled, the absence of definitions raised the possibility that culpable offenders might escape punishment on a technicality. For instance, the common law definition of burglary includes a requirement that the offense be committed during the nighttime and with respect to a dwelling. However, for purposes of this Act, such limitations are not appropriate. Furthermore, in terms of fundamental fairness, the Act should ensure, to the extent that it is consistent with the prerogatives of the States in defining their own offenses, that the same type of conduct is punishable on the Federal level in all cases." S. Rep., at 20.

In 1986, § 1202 was recodified as 18 U. S. C. § 924(e) by the Firearms Owners' Protection Act, Pub. L. 99–308, § 104, 100 Stat. 458. The definition of burglary was amended slightly, by replacing the words "any felony" with "any crime punishable by a term of imprisonment exceeding one year and . . . ."

Only five months later, § 924(e) again was amended, into its present form, by § 1402 of Subtitle I (the Career Criminals Amendment Act of 1986) of the Anti-Drug Abuse Act of 1986, 100 Stat. 3207–39. This amendment effected three changes that, taken together, give rise to the problem presented in this case. It expanded the predicate offenses triggering the sentence enhancement from "robbery or burglary" to "a violent felony or a serious drug offense"; it defined the term "violent felony" to include "burglary"; and it deleted the pre-existing definition of burglary.

The legislative history is silent as to Congress' reason for deleting the definition of burglary. It does reveal, however, the general purpose and approach of the Career Criminals Amendment Act of 1986. Two bills were proposed; from

these the current statutory language emerged as a compromise. The first bill, introduced in the Senate by Senator Specter and in the House by Representative Wyden, provided that any "crime of violence" would count toward the three prior convictions required for a sentence enhancement, and defined "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." S. 2312, 99th Cong., 2d Sess. (1986); H. R. 4639, 99th Cong., 2d Sess. (1986). The second bill, introduced in the House by Representatives Hughes and McCollum, took a narrower approach, restricting the crimes that would count toward enhancement to "any State or Federal felony that has as an element the use, attempted use, or threatened use of physical force against the person of another." H. R. 4768, 99th Cong., 2d Sess. (1986).

When Senator Specter introduced S. 2312 in the Senate, he stated that since the enhancement provision had been in effect for a year and a half, and "has been successful with the basic classification of robberies and burglaries as the definition for 'career criminal,' the time has come to broaden that definition so that we may have a greater sweep and more effective use of this important statute." 132 Cong. Rec. 7697 (1986). Similarly, during the House and Senate hearings on the bills, the witnesses reiterated the concerns that prompted the original enactment of the enhancement provision in 1984: the large proportion of crimes committed by a small number of career offenders, and the inadequacy of state prosecutorial resources to address this problem. See Armed Career Criminal Legislation: Hearing on H. R. 4639 and H. R. 4768 before the Subcommittee on Crime of the House Committee on the Judiciary, 99th Cong., 2d Sess. (1986) (House Hearing); Armed Career Criminal Act Amendments:

Hearing on S. 2312 before the Subcommittee on Criminal Law of the Senate Committee on the Judiciary, 99th Cong., 2d Sess. (1986) (Senate Hearing). The issue under consideration was uniformly referred to as "expanding" the range of predicate offenses. House Hearing, at 8 ("[A]ll of us want to see the legislation expanded to other violent offenders and career drug dealers") (statement of Rep. Wyden); *id.*, at 11 ("I think we can all agree that we should expand the predicate offenses") (statement of Rep. Hughes); *id.*, at 14 (statement of Deputy Assistant Attorney General James Knapp); *id.*, at 32–33 (statement of Bruce Lyons, President-elect of National Association of Criminal Defense Lawyers); *id.*, at 44 (statement of Sen. Specter); Senate Hearing, at 1 ("The time seems ripe in many quarters, including the Department of Justice, to expand the armed career criminal bill to include other offenses") (statement of Sen. Specter); *id.*, at 15 (statement of United States Attorney Edward S. G. Dennis, Jr.); *id.*, at 20 (statement of David Dart Queen of the Department of the Treasury); *id.*, at 49 and 55 (statement of Ronald D. Castille, District Attorney, Philadelphia).

Witnesses criticized the narrower bill, H. R. 4768, for excluding property crimes, pointing out that some such crimes present a serious risk of harm to persons, and that the career offenders at whom the enhancement provision is aimed often specialize in property crimes, especially burglary. See House Hearing, at 9 and 12 ("I would hope . . . that at least some violent felonies against property could be included"; "people . . . make a full-time career and commit hundreds of burglaries") (statements of Rep. Wyden); *id.*, at 49–53 (statement of Mr. Castille). The testimony of Mr. Knapp focused specifically on whether the enhancement provision should include burglary as a predicate offense. He criticized H. R. 4768 for excluding "such serious felonies against property as most burglary offenses" and thus "inadvertently narrow[ing] the scope of the present Armed Career Criminal Act," and went on to say:

"Now the question has been raised, well, what crimes against property should be included? We think, burglary, of course; arson; extortion; and various explosives offenses. . . .

"The one problem I see in using a specific generic term like burglary or arson—that's fine for those statutes—but a lot of these newer explosive offenses don't have a single generic term that covers them, and that is something that the committee may want to be very careful about in coming up with the final statutory language.

"It is these crimes against property—which are inherently dangerous—that we think should be considered as predicate offenses." House Hearing, at 15.

In response to a question by Representative Hughes as to the justification for retaining burglary as a predicate offense, Mr. Knapp explained that "your typical career criminal is most likely to be a burglar," and that "even though injury is not an element of the offense, it is a potentially very dangerous offense, because when you take your very typical residential burglary or even your professional commercial burglary, there is a very serious danger to people who might be inadvertently found on the premises." *Id.*, at 26. He qualified his remarks, however, by saying: "Obviously, we would not consider, as prior convictions, what I would call misdemeanor burglaries, or your technical burglaries, or anything like that." *Ibid.*

Representative Hughes put the same question to the next witness, Mr. Lyons. The witness replied:

"When you use burglary, burglary is going back to really what the original legislative history and intent was, to get a hold of the profit motive and to the recidivist armed career criminal. The NACDL really has no problem with burglary as a predicate offense." *Id.*, at 38.

In his prepared statement for the Subcommittee, the witness had noted that H. R. 4768 "would not appear to encompass

. . . burglary," and that "[i]f the Subcommittee concludes that it can accept no retreat from current law, we would suggest that the preservation of burglary as a prior offense be accomplished simply by retaining 'burglary' . . . rather than by substituting for it the all-inclusive 'crime of violence' definition proposed in H. R. 4639." House Hearing, at 34.

H. R. 4639, on the other hand, was seen as too broad. See *id.*, at 11 ("[I]t is important to prioritize offenses") (statement of Rep. Hughes); *id.*, at 16 ("[T]he answer probably lies somewhere between the two bills") (statement of Mr. Knapp). The hearing concluded with a statement by Representative Hughes, a sponsor of the narrower bill, H. R. 4768:

> "Frankly, I think on the question of burglaries, I can see the arguments both ways. We have already included burglaries.
>
> "My leanings would be to leave it alone; it is in the existing law; it was the existing statute. We can still be specific enough. We are talking about burglaries that probably are being carried out by an armed criminal, because the triggering mechanism is that they possess a weapon . . . . So we are not talking about the average run-of-the-mill burglar necessarily, we are talking about somebody who also illegally possesses or has been transferred a firearm." House Hearing, at 41.

After the House hearing, the Subcommittee drafted a compromise bill, H. R. 4885. This bill included "violent felony" as a predicate offense, and provided that

> "the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year that—
>
> "(i) has as an element the use, attempted use, or threatened use of force against the person of another; or
>
> "(ii) involves conduct that presents a serious potential risk of physical injury to another."

H. R. 4885 was favorably reported by the House Committee on the Judiciary.   H. R. Rep. No. 99–849 (1986).   The Report explained:

> "The Subcommittee on Crime held a hearing . . . to consider whether it should expand the predicate offenses (robbery and burglary) in existing law in order to add to its effectiveness.   At this hearing a consensus developed in support of an expansion of the predicate offenses to include serious drug trafficking offenses . . . and violent felonies, generally.   This concept was encompassed in H. R. 4885 by deleting the specific predicate offenses for robbery and burglary and adding as predicate offenses [certain drug offenses] and violent felonies . . . .
>
> "The other major question involved in these hearings was as to what violent felonies involving physical force against *property* should be included in the definition of 'violent' felony.   The Subcommittee agreed to add the crimes punishable for a term exceeding one year that involve conduct that presents a serious potential risk of physical injury to others.   This will add State and Federal crimes against property such as burglary, arson, extortion, use of explosives and similar crimes as predicate offenses where the conduct involved presents a serious risk of injury to a person" (emphasis in original).   *Id.*, at 3.

The provision as finally enacted, however, added to the above-quoted subsection (ii) the phrase that is critical in this case: " . . . *is burglary, arson, or extortion, involves use of explosives, or otherwise* involves conduct that presents a serious potential risk of physical injury to another."   18 U. S. C. § 924(e)(2)(B)(ii) (emphasis added).

   Some useful observations may be drawn.   First, throughout the history of the enhancement provision, Congress focused its efforts on career offenders—those who commit a large number of fairly serious crimes as their means of livelihood, and who, because they possess weapons, present at

least a potential threat of harm to persons. This concern was not limited to offenders who had actually been convicted of crimes of violence against persons. (Only H. R. 4768, rejected by the House Subcommittee, would have restricted the predicate offenses to crimes actually involving violence against persons.)

The legislative history also indicates that Congress singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense, both in 1984 and in 1986, because of its inherent potential for harm to persons. The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate. And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape. Congress apparently thought that all burglaries serious enough to be punishable by imprisonment for more than a year constituted a category of crimes that shared this potential for violence and that were likely to be committed by career criminals. There never was any proposal to limit the predicate offense to some special subclass of burglaries that might be especially dangerous, such as those where the offender is armed, or the building is occupied, or the crime occurs at night.[4]

Second, the enhancement provision always has embodied a categorical approach to the designation of predicate offenses. In the 1984 statute, "robbery" and "burglary" were defined in the statute itself, not left to the vagaries of state law. See 18 U. S. C. App. §§ 1202(c)(8) and (9) (1982 ed., Supp. III). Thus, Congress intended that the enhancement provision be triggered by crimes having certain specified elements, not by crimes that happened to be labeled "robbery" or "burglary"

---

[4] Some States have first-degree or aggravated-burglary statutes that single out such especially dangerous forms of burglary. See LaFave & Scott §§ 8.13(f), (g), pp. 475–478.

by the laws of the State of conviction. Each of the proposed versions of the 1986 amendment carried forward this categorical approach, extending the range of predicate offenses to all crimes having certain common characteristics—the use or threatened use of force, or the risk that force would be used—regardless of how they were labeled by state law.

Third, the 1984 definition of burglary shows that Congress, at least at that time, had in mind a modern "generic" view of burglary, roughly corresponding to the definitions of burglary in a majority of the States' criminal codes. See *United States* v. *Hill*, 863 F. 2d, at 1582, n. 5. In adopting this definition, Congress both prevented offenders from invoking the arcane technicalities of the common-law definition of burglary to evade the sentence-enhancement provision, and protected offenders from the unfairness of having enhancement depend upon the label employed by the State of conviction. See S. Rep., at 20.

Nothing in the legislative history of the 1986 amendment shows that Congress was dissatisfied with the 1984 definition. All the testimony and reports read as if the meaning of burglary was undisputed. The debate at the 1986 hearings centered upon whether any property crimes should be included as predicate offenses, and if so, which ones. At the House hearing, the Subcommittee reached a consensus that at least some property crimes, including burglary, should be included, but again there was no debate over the proper definition of burglary. The compromise bill, H. R. 4885, apparently was intended to include burglary, among other serious property offenses, by implication, as a crime that "involves conduct that presents a serious potential risk of physical injury to another." The language added to H. R. 4885 before its enactment seemingly was meant simply to make explicit the provision's implied coverage of crimes such as burglary.

The legislative history as a whole suggests that the deletion of the 1984 definition of burglary may have been an inad-

vertent casualty of a complex drafting process.[5]   In any event, there is nothing in the history to show that Congress intended in 1986 to replace the 1984 "generic" definition of burglary with something entirely different.   Although the omission of a pre-existing definition of a term often indicates Congress' intent to reject that definition, see *INS* v. *Cardoza-Fonseca*, 480 U. S. 421, 432 (1987); *Russello* v. *United States*, 464 U. S. 16, 23 (1983), we draw no such inference here.

Nor is there any indication that Congress ever abandoned its general approach, in designating predicate offenses, of using uniform, categorical definitions to capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders, regardless of technical definitions and labels under state law.

### III

These observations about the purpose and general approach of the enhancement provision enable us to narrow the range of possible meanings of the term "burglary."

### A

First, we are led to reject the view of the Court of Appeals in this case.   It seems to us to be implausible that Congress intended the meaning of "burglary" for purposes of § 924(e) to depend on the definition adopted by the State of conviction. That would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence en-

---

[5] The Senate, on October 5, 1989, passed a bill, S. 1711, 101st Cong., 1st Sess., that would add to § 924(e)(2) a definition of burglary identical to the one deleted in 1986.   See 135 Cong. Rec. 23613 (1989).   In introducing the bill, Senator Biden explained that the amendment

"corrects an error that occurred inadvertently when the definition of burglary was deleted from the Armed Career Criminal statute in 1986. The amendment reenacts the original definition which was intended to be broader than common law burglary."   *Id.*, at 23519.

This bill is pending in the House.

hancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct "burglary."

For example, Michigan has no offense formally labeled "burglary." It classifies burglaries into several grades of "breaking and entering." See Mich. Comp. Laws § 750.110 (1979). In contrast, California defines "burglary" so broadly as to include shoplifting and theft of goods from a "locked" but unoccupied automobile. See Cal. Penal Code Ann. § 459 (West Supp. 1990); *United States* v. *Chatman*, 869 F. 2d 525, 528–529, and n. 2 (CA9 1989) (entry through unsecured window of an unoccupied auto, and entry of a store open to the public with intent to commit theft, are "burglary" under California law); see also Tex. Penal Code Ann. §§ 30.01–30.05 (1989 and Supp. 1990) (defining burglary to include theft from coin-operated vending machine or automobile); *United States* v. *Leonard*, 868 F. 2d 1393, 1395, n. 2 (CA5 1989), cert. pending, No. 88–1885.

Thus, a person imprudent enough to shoplift or steal from an automobile in California would be found, under the Ninth Circuit's view, to have committed a burglary constituting a "violent felony" for enhancement purposes—yet a person who did so in Michigan might not. Without a clear indication that with the 1986 amendment Congress intended to abandon its general approach of using uniform categorical definitions to identify predicate offenses, we do not interpret Congress' omission of a definition of "burglary" in a way that leads to odd results of this kind. See *Dickerson* v. *New Banner Institute, Inc.*, 460 U. S. 103, 119–120 (1983) (absent plain indication to the contrary, federal laws are not to be construed so that their application is dependent on state law, "because the application of federal legislation is nationwide and at times the federal program would be impaired if state law were to control"); *United States* v. *Turley*, 352 U. S. 407, 411 (1957) ("[I]n the absence of a plain indication of an intent to incorporate diverse state laws into a federal criminal statute,

the meaning of the federal statute should not be dependent on state law").

This Court's response to the similar problem of interpreting the term "extortion" in the Travel Act, 18 U. S. C. § 1952, is instructive:

> "Appellees argue that Congress' decision not to define extortion combined with its decision to prohibit only extortion in violation of state law compels the conclusion that peculiar versions of state terminology are controlling . . . . The fallacy of this contention lies in its assumption that, by defining extortion with reference to state law, Congress also incorporated state labels for particular offenses. Congress' intent was to aid local law enforcement officials, not to eradicate only those extortionate activities which any given State denominated extortion. . . . Giving controlling effect to state classifications would result in coverage under § 1952 if appellees' activities were centered in Massachusetts, Michigan, or Oregon, but would deny coverage in Indiana, Kansas, Minnesota, or Wisconsin although each of these States prohibits identical criminal activities." *United States* v. *Nardello*, 393 U. S. 286, 293–294 (1969).

We think that "burglary" in § 924(e) must have some uniform definition independent of the labels employed by the various States' criminal codes.

## B

Some Courts of Appeals, see n. 2, *supra*, have ruled that § 924(e) incorporates the common-law definition of burglary, relying on the maxim that a statutory term is generally presumed to have its common-law meaning. See *Morissette* v. *United States*, 342 U. S. 246, 263 (1952). This view has some appeal, in that common-law burglary is the core, or common denominator, of the contemporary usage of the term. Almost all States include a breaking and entering of a dwelling at night, with intent to commit a felony, among their

definitions of burglary. Whatever else the Members of Congress might have been thinking of, they presumably had in mind at least the "classic" common-law definition when they considered the inclusion of burglary as a predicate offense.

The problem with this view is that the contemporary understanding of "burglary" has diverged a long way from its common-law roots. Only a few States retain the common-law definition, or something closely resembling it.[6] Most other States have expanded this definition to include entry without a "breaking," structures other than dwellings, offenses committed in the daytime, entry with intent to commit a crime other than a felony, etc. See LaFave & Scott, *supra*, n. 3, §§ 8.13(a) through (f), pp. 464–475. This statutory development, "when viewed in totality, has resulted in a modern crime which has little in common with its common-law ancestor except for the title of burglary." *Id.*, at § 8.13(g), p. 476.

Also, interpreting "burglary" in § 924(e) to mean common-law burglary would not comport with the purposes of the enhancement statute. The arcane distinctions embedded in the common-law definition have little relevance to modern law enforcement concerns.[7] It seems unlikely that the

[6] See, *e. g.*, Md. Ann. Code, Art. 27, § 30 (1987); Mass. Gen. Laws, ch. 266, § 15 (1990); Miss. Code Ann. § 97–17–19 (1972); W. Va. Code § 61–3–11 (1989).

[7] Consider Blackstone's exposition of one of the elements of burglary:

"The *time* must be by night, and not by day: for in the day time there is no burglary. We have seen, in the case of justifiable homicide, how much more heinous all laws made an attack by night, rather than by day; allowing the party attacked by night to kill the assailant with impunity. As to what is reckoned night, and what day, for this purpose: anciently the day was accounted to begin only at sun-rising, and to end immediately upon sun-set; but the better opinion seems to be, that if there be daylight or *crepusculum* enough, begun or left, to discern a man's face withal, it is no burglary. But this does not extend to moonlight; for then many midnight burglaries would go unpunished: and besides, the malignity of the offence does not so properly arise from its being done in the dark, as at the dead of night; when all the creation, except beasts of prey, are at rest; when sleep

Members of Congress, immersed in the intensely practical concerns of controlling violent crime, would have decided to abandon their modern, generic 1984 definition of burglary and revert to a definition developed in the ancient English law—a definition mentioned nowhere in the legislative history. Moreover, construing "burglary" to mean common-law burglary would come close to nullifying that term's effect in the statute, because few of the crimes now generally recognized as burglaries would fall within the common-law definition.

It could be argued, of course, that common-law burglary, by and large, involves a greater "potential risk of physical injury to another." § 924(e)(2)(B)(ii). But, even assuming that Congress intended to restrict the predicate offense to some especially dangerous subclass of burglaries, restricting it to common-law burglary would not be a rational way of doing so. The common-law definition does not require that the offender be armed or that the dwelling be occupied at the time of the crime. An armed burglary of an occupied commercial building, in the daytime, would seem to pose a far greater risk of harm to persons than an unarmed nocturnal breaking and entering of an unoccupied house. It seems unlikely that Congress would have considered the latter, but not the former, to be a "violent felony" counting towards a sentence enhancement. In the absence of any specific indication that Congress meant to incorporate the common-law meaning of burglary, we shall not read into the statute a definition of "burglary" so obviously ill suited to its purposes.

This Court has declined to follow any rule that a statutory term is to be given its common-law meaning, when that meaning is obsolete or inconsistent with the statute's pur-

---

has disarmed the owner, and rendered his castle defenceless." 4 W. Blackstone, Commentaries *224.

See also *id.*, at *224–*228 (burglary must be of a *"mansion*-house," must involve a breaking and entering, and must be with intent to commit a felony).

pose. In *Perrin* v. *United States*, 444 U. S. 37 (1979), this Court rejected the argument that the Travel Act incorporated the common-law definition of "bribery" because, by 1961 when the Act was passed,

> "the common understanding and meaning of 'bribery' had extended beyond its early common-law definitions. In 42 States and in federal legislation, 'bribery' included the bribery of individuals acting in a private capacity. It was against this background that the Travel Act was passed.
>
> .     .     .     .     .
>
> " . . . The record of the hearings and floor debates discloses that Congress made no attempt to define the statutory term 'bribery,' but relied on the accepted contemporary meaning" (footnote omitted). *Id.*, at 45.

For this reason, the Court concluded that "the generic definition of bribery, rather than a narrow common-law definition, was intended by Congress." *Id.*, at 49. Similarly, in *United States* v. *Nardello*, 393 U. S. 286 (1969), this Court held that the Travel Act did not incorporate the common-law definition of "extortion," because that definition had been expanded in many States by the time the Act was passed, *id.*, at 289, and because such an interpretation would conflict with the Act's purpose to curb the activities of organized crime. *Id.*, at 293. The Court therefore declined the give the term an "unnaturally narrow reading," and concluded that the defendants' acts fell within "the generic term extortion as used in the Travel Act." *Id.*, at 296. See also *Bell* v. *United States*, 462 U. S. 356, 362 (1983) (common-law limitation on meaning of "larceny" not incorporated in Bank Robbery Act because "[t]he congressional goal of protecting bank assets is entirely independent of the traditional distinction on which [the defendant] relies"); *United States* v. *Turley*, 352 U. S., at 416–417 (application of National Motor Vehicle Theft Act not limited to "situations which at common law would be considered larceny" because "[p]rofessional thieves resort to in-

numerable forms of theft and Congress presumably sought to meet the need for federal action effectively rather than to leave loopholes for wholesale evasion").

Petitioner argues that the narrow common-law definition of burglary would comport with the rule of lenity—that criminal statutes, including sentencing provisions, are to be construed in favor of the accused. See *Bifulco* v. *United States*, 447 U. S. 381, 387 (1980); *Simpson* v. *United States*, 435 U. S. 6, 14–15 (1978). This maxim of statutory construction, however, cannot dictate an implausible interpretation of a statute, nor one at odds with the generally accepted contemporary meaning of a term. See *Perrin* v. *United States*, 444 U. S., at 49, n. 13.

## C

Petitioner suggests another narrowing construction of the term "burglary," more suited to the purpose of the enhancement statute:

> "Burglary is any crime punishable by a term of imprisonment exceeding one year and consisting of entering or remaining within a building that is the property of another with intent to engage in conduct constituting a Federal or State offense that has as an element necessary for conviction conduct that presents a serious risk of physical injury to another." Brief for Petitioner 29.

As examples of burglary statutes that would fit this definition, petitioner points to first-degree or aggravated-burglary statutes having elements such as entering an occupied building; being armed with a deadly weapon; or causing or threatening physical injury to a person. See n. 4, *supra*. This definition has some appeal, because it avoids the arbitrariness of the state-law approach, by restricting the predicate offense in a manner congruent with the general purpose of the enhancement statute.

We do not accept petitioner's proposal, however, for two reasons. First, it is not supported by the language of the

statute or the legislative history. Petitioner essentially asserts that Congress meant to include as predicate offenses only a subclass of burglaries whose elements include "conduct that presents a serious risk of physical injury to another," over and above the risk inherent in ordinary burglaries. But if this were Congress' intent, there would have been no reason to add the word "burglary" to § 924(e)(2)(B)(ii), since that provision already includes *any* crime that "involves conduct that presents a serious potential risk of physical injury to another." We must assume that Congress had a purpose in adding the word "burglary" to H. R. 4885 before enacting it into law. The most likely explanation, in view of the legislative history, is that Congress thought that certain general categories of property crimes—namely burglary, arson, extortion, and the use of explosives—so often presented a risk of injury to persons, or were so often committed by career criminals, that they should be included in the enhancement statute even though, considered solely in terms of their statutory elements, they do not necessarily involve the use or threat of force against a person.

Second, if Congress had meant to include only an especially dangerous subclass of burglaries as predicate offenses, it is unlikely that it would have used the unqualified language "*is* burglary . . . or otherwise involves conduct that presents a serious potential risk" in § 924(e)(2)(B)(ii) (emphasis added). Congress presumably realized that the word "burglary" is commonly understood to include not only aggravated burglaries, but also run-of-the-mill burglaries involving an unarmed offender, an unoccupied building, and no use or threat of force. This choice of language indicates that Congress thought ordinary burglaries, as well as burglaries involving some element making them especially dangerous, presented a sufficiently "serious potential risk" to count toward enhancement.

## D

We therefore reject petitioner's view that Congress meant to include only a special subclass of burglaries, either those that would have been burglaries at common law, or those that involve especially dangerous conduct. These limiting constructions are not dictated by the rule of lenity. See *supra*, at 596. We believe that Congress meant by "burglary" the generic sense in which the term is now used in the criminal codes of most States. See *Perrin*, 444 U. S., at 45; *Nardello*, 393 U. S., at 289.

Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.[8] See LaFave & Scott, *supra*, n. 3, § 8.13(a), p. 466 (modern statutes "generally require that the entry be unprivileged"); *id.*, § 8.13(c), p. 471 (modern statutes "typically describe the place as a 'building' or 'structure'"); *id.*, § 8.13(e), p. 474 ("[T]he prevailing view in the modern codes is that an intent to commit any offense will do").

This generic meaning, of course, is practically identical to the 1984 definition that, in 1986, was omitted from the enhancement provision. The 1984 definition, however, was not explicitly replaced with a different or narrower one; the legislative history discloses that no alternative definition of burglary was ever discussed. As we have seen, there simply is no plausible alternative that Congress could have had in mind. The omission of a definition of burglary in the 1986

---

[8] This usage approximates that adopted by the drafters of the Model Penal Code:

"A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." American Law Institute, Model Penal Code § 221.1 (1980).

Act therefore implies, at most, that Congress did not wish to specify an exact formulation that an offense must meet in order to count as "burglary" for enhancement purposes.

We conclude that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

## IV

There remains the problem of applying this conclusion to cases in which the state statute under which a defendant is convicted varies from the generic definition of "burglary." If the state statute is narrower than the generic view, *e. g.*, in cases of burglary convictions in common-law States or convictions of first-degree or aggravated burglary, there is no problem, because the conviction necessarily implies that the defendant has been found guilty of all the elements of generic burglary. And if the defendant was convicted of burglary in a State where the generic definition has been adopted, with minor variations in terminology, then the trial court need find only that the state statute corresponds in substance to the generic meaning of burglary.

A few States' burglary statutes, however, as has been noted above, define burglary more broadly, *e. g.*, by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings. One of Missouri's second-degree burglary statutes in effect at the times of petitioner Taylor's convictions included breaking and entering "any booth or tent, or any boat or vessel, or railroad car." Mo. Rev. Stat. § 560.070 (1969) (repealed). Also, there may be offenses under some States' laws that, while not called "burglary," correspond in substantial part to generic burglary. We therefore must address the question whether, in the case of a defendant who has been convicted under a nongeneric-

burglary statute, the Government may seek enhancement on the ground that he actually committed a generic burglary.[9]

This question requires us to address a more general issue—whether the sentencing court in applying §924(e) must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes. The Courts of Appeals uniformly have held that §924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions. See *United States* v. *Chatman*, 869 F. 2d, at 529; *United States* v. *Headspeth*, 852 F. 2d 753, 758–759 (CA4 1988); *United States* v. *Vidaure*, 861 F. 2d 1337, 1340 (CA5 1988), cert. denied, 489 U. S. 1088 (1989); *United States* v. *Sherbondy*, 865 F. 2d 996, 1006–1010 (CA9 1988). We find the reasoning of these cases persuasive.

First, the language of §924(e) generally supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions. Section 924(e)(1) refers to "a person who . . . has three previous convictions" for—not a person who has committed—three previous violent felonies or drug offenses. Section 924(e)(2)(B)(i) defines "violent felony" as any crime punishable by imprisonment for more than a year that "has as an element"—not any crime that, in a particular case, involves—the use or threat of force. Read in this context, the phrase "is burglary" in §924(e)(2)(B)(ii)

---

[9] Our present concern is only to determine what offenses should count as "burglaries" for enhancement purposes. The Government remains free to argue that any offense—including offenses similar to generic burglary—should count towards enhancement as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another" under §924(e)(2)(B)(ii).

most likely refers to the elements of the statute of conviction, not to the facts of each defendant's conduct.

Second, as we have said, the legislative history of the enhancement statute shows that Congress generally took a categorical approach to predicate offenses. There was considerable debate over what kinds of offenses to include and how to define them, but no one suggested that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case. If Congress had meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses, surely this would have been mentioned somewhere in the legislative history.

Third, the practical difficulties and potential unfairness of a factual approach are daunting. In all cases where the Government alleges that the defendant's actual conduct would fit the generic definition of burglary, the trial court would have to determine what that conduct was. In some cases, the indictment or other charging paper might reveal the theory or theories of the case presented to the jury. In other cases, however, only the Government's actual proof at trial would indicate whether the defendant's conduct constituted generic burglary. Would the Government be permitted to introduce the trial transcript before the sentencing court, or if no transcript is available, present the testimony of witnesses? Could the defense present witnesses of its own and argue that the jury might have returned a guilty verdict on some theory that did not require a finding that the defendant committed generic burglary? If the sentencing court were to conclude, from its own review of the record, that the defendant actually committed a generic burglary, could the defendant challenge this conclusion as abridging his right to a jury trial? Also, in cases where the defendant pleaded guilty, there often is no record of the underlying facts. Even if the Government were able to prove those facts, if a guilty plea to a lesser, nonburglary offense was the result of a plea bargain,

it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary.

We think the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense.[10] This categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary. For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

We therefore hold that an offense constitutes "burglary" for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to "generic" burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant.

In Taylor's case, most but not all the former Missouri statutes defining second-degree burglary include all the elements of generic burglary. See n. 1, *supra*. Despite the Government's argument to the contrary, it is not apparent to us from the sparse record before us which of those statutes were the bases for Taylor's prior convictions. We therefore vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

---

[10] Even if an enhancement is not available under § 924(e), the Government may still present evidence of the defendant's actual prior criminal conduct, to increase his sentence for the § 922(g)(1) violation under the Federal Sentencing Guidelines.

JUSTICE SCALIA, concurring in part and concurring in the judgment.

I join in the Court's opinion except for Part II, which examines in great detail the statute's legislative history. The examination does not uncover anything useful (*i. e.*, anything that tempts us to alter the meaning we deduce from the text anyway), but that is the usual consequence of these inquiries (and a good thing, too). What is noteworthy, however, is that in this case it is hard to understand what we would have done if we *had* found anything useful. The Court says, correctly, that the statutory term "burglary" has a "generally accepted contemporary meaning" which must be given effect and which may not be modified by the rule of lenity. *Ante*, at 596, 598. But if the meaning is so clear that it cannot be constricted by that venerable canon of construction, surely it is not so ambiguous that it can be constricted by the sundry floor statements, witness testimony, and other legislative incunabula that the Court discusses. Is it conceivable that we look to the legislative history only to determine whether it displays, not a *less* extensive punitive intent than the plain meaning (the domain of the rule of lenity), but a *more* extensive one? If we found a more extensive one, I assume we would then have to apply the rule of lenity, bringing us back once again to the ordinary meaning of the statute. It seems like a lot of trouble.

I can discern no reason for devoting 10 pages of today's opinion to legislative history, except to show that we have given this case close and careful consideration. We must find some better way of demonstrating our conscientiousness.