**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0914n.06
Filed: December 20, 2006

**No. 05-5698**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOSEPH HOWARD ORTKIESE, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Appellant. | ) | |

Before: SUTTON and GRIFFIN, Circuit Judges; and COHN, District Judge.[*]

SUTTON, Circuit Judge. Joseph Ortkiese appeals his 15-year sentence under the Armed Career Criminal Act. Because the district court did not commit any error in sentencing him under the Act, we affirm.

I.

While flying a helicopter over rural areas of Cannon County, Tennessee, state police officers spotted several marijuana plants growing next to a dirt path about 50 yards from Ortkiese's mobile home. The police proceeded to Ortkiese's home, advised his wife that they had spotted marijuana

---

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

growing on the property and uprooted and seized 15 marijuana plants. The police secured the premises and sought a warrant to search his home.

By the time the officers returned with a warrant, Ortkiese had come home. They placed him under arrest and asked him to sit in the living room while they searched other rooms of the home. The officers found three long guns in the bedroom and two handguns atop the refrigerator. Even though the officers had not questioned him yet, Ortkiese said, "Well, I have owned those guns for 15 years," after the officer retrieved the handguns from their perch. JA 71. He also said, presumably in reference to the long guns, that he "ha[d] owned those weapons for a while." *Id.* The officers found several more guns in the out building.

On May 26, 2004, a federal grand jury indicted Ortkiese under the felon-in-possession statute, 18 U.S.C. §§ 922(g)(1), 924. After the district court denied Ortkiese's motion to suppress, a jury convicted Ortkiese on the charge. At sentencing, the government introduced evidence that Ortkiese had been thrice convicted of burglary in Florida—once in 1976 and twice in 1982—and urged the court to sentence him under the Armed Career Criminal Act. Ortkiese responded that the third conviction did not count as a "violent felony" under the Act because he had pleaded nolo contendere only to attempted burglary of a dwelling and third-degree burglary of a storage cottage. The district court rejected Ortkiese's argument, reasoning that burglary of a storage cottage was a "generic" form of burglary for purposes of the Act, *see* 18 U.S.C. § 924(e)(1), and sentenced him to the mandatory minimum under the Act—15 years.

II.

Ortkiese raises three challenges to his conviction and sentence: (1) the district court erred in denying his motion to suppress the evidence found in his home; (2) third-degree burglary of a storage cottage is not a "violent felony" under the Armed Career Criminal Act; and (3) the Sixth Amendment prevents a judge from enhancing a defendant's sentence based on prior convictions.

A.

"When reviewing the denial of a motion to suppress evidence, the appellate court must consider the evidence in the light most favorable to the government." *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc). And when a litigant fails to voice a claim at trial but does so on appeal, we review the argument for plain error. Fed. R. Crim. P. 52(b); *see also Johnson v. United States*, 520 U.S. 461, 467 (1997) (holding that a litigant must show "(1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings") (internal quotation marks omitted); *see also United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998).

Ortkiese first submits that the officers violated his Fourth Amendment rights when they entered his property to seize the marijuana plants. Supp. Br. at 8. The problem with this contention is that the Fourth Amendment does not extend to the open fields surrounding a person's home, *Oliver v. United States*, 466 U.S. 170, 180 (1984); *Hester v. United States*, 265 U.S. 57, 59 (1924),

or to contraband that an individual freely exposes to the public, *Horton v. California*, 496 U.S. 128, 136–37 (1990). *See Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

Here, the police spotted several marijuana plants growing in Ortkiese's backyard while conducting a routine helicopter flyover. The marijuana plants were not within the curtilage of Ortkiese's home, as the officers spotted the contraband 50 yards behind the home, out in the open and without any enclosure. The Supreme Court, notably, has reaffirmed the open-fields doctrine in the precise context of the cultivation of marijuana plants some distance from a person's residence. *See Oliver*, 466 U.S. at 174, 179; *cf. United States v. Dunn*, 480 U.S. 301 (1987) (defining the curtilage protected by the Fourth Amendment by its "proximity . . . to the home," whether it is "within an enclosure surrounding the home," how it is used by the owner and "the steps taken . . . to protect the area from observation by people passing by").

To the extent Ortkiese means to challenge the government's search of his property by a helicopter, he offers no evidence to support his theory that the police were targeting him for investigation, as opposed to performing a generalized flyover, the latter of which the Court has approved as constitutionally permissible. *See Florida v. Riley*, 488 U.S. 445, 450–51 (1989) (plurality); *id.* at 454–55 (O'Connor, J., concurring in the judgment). Because the officers' search for, and seizure of, the marijuana plants were valid in every respect, the district court correctly rejected his Fourth Amendment challenge.

Equally unavailing is Ortkiese's claim that the district court should have suppressed the statements he made to police during the search of his home. Under *Miranda v. Arizona*, 384 U.S. 436 (1966), we presume that statements given by a defendant in response to a custodial interrogation are coerced (and thus inadmissible at trial) unless the defendant waived his Fifth Amendment rights, *id.* at 444–45. At the time Ortkiese made these statements, it is true, he was in custody, and the police had not yet given him *Miranda* warnings. But Ortkiese did not make the statements in response to an interrogation, and accordingly they need not be excluded. *See Oregon v. Elstad*, 470 U.S. 298, 317 (1985).

As *Rhode Island v. Innis*, 446 U.S. 291 (1980), makes clear, interrogation "extend[s] only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response," *id.* at 302. The officers in this instance arrested Ortkiese and sat him on a couch in his living room while they searched the rest of the home. At no point before administering the *Miranda* warnings did the officers address Ortkiese or ask him about the guns they had found. And at no point did the officers strike up a provocative conversation within earshot of Ortkiese. Ortkiese simply volunteered the statements after the officers discovered the two handguns atop his refrigerator.

Nor does the Fourth Amendment require the officers to remove the suspect from his home during the search; if anything, just the opposite is true. *Cf. United States v. Chadwick*, 433 U.S. 1, 9 (1977) ("[A] [search] warrant assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search."),

No. 05-5698
*United States v. Ortkiese*

*abrogated on other grounds*, *California v. Acevedo*, 500 U.S. 565 (1991).  And in further claiming that the police violated his Sixth Amendment right to counsel during the search of his house, Ortkiese overlooks the point that the right to counsel does not attach until "adversary *judicial* proceedings" begin.  *Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (emphasis added).

B.

Ortkiese next challenges the district court's classification of his third-degree burglary of a storage cottage as a violent felony under the Armed Career Criminal Act.  A person who violates the felon-in-possession statute, 18 U.S.C. § 922(g), and who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another," the Act says, "shall be fined . . . and imprisoned not less than fifteen years," *id.* § 924(e)(1).  "[V]iolent felony," the Act also says, includes "burglary," *id.* § 924(e)(2)(B), which covers "an unlawful or unprivileged entry into . . . a building or other structure, with intent to commit a crime," *Taylor v. United States*, 495 U.S. 575, 598 (1990).

Ortkiese's conviction for third-degree burglary of a storage cottage satisfies this definition.  The Florida burglary statute, it is true, encompasses "generic" burglaries (*i.e.*, those traditional burglaries covered by the Act) and "non-generic" burglaries (*i.e.*, burglaries involving an illegal entry into a conveyance or curtilage not covered by the Act).  *See United States v. Pluta*, 144 F.3d 968, 975–76 (6th Cir. 1998); *United States v. Adams*, 91 F.3d 114, 115 (11th Cir. 1996).  But the information for Ortkiese's burglary charges establishes that he committed a generic burglary—that

he "unlawfully and without invitation or license did enter that certain structure other than a dwelling, to-wit: a storage cottage . . . with the intent to commit an offense therein, to-wit: theft," JA 204; *see Taylor*, 495 U.S. at 602 ("[I]f the indictment or information . . . show[s] that the defendant was charged only with a burglary of a building, and that the [judge] necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement."); *Shepard v. United States*, 544 U.S. 13, 16 (2005) (noting that the facts necessary to a prior conviction could be identified from the "statutory definition" and the "charging document," among other things). Because a storage cottage amounts to a "building or other structure," Ortkiese's prior conviction for third-degree burglary of a storage cottage was a violent felony under § 924(e).

Ortkiese raises four objections to this analysis, not one of which is convincing. First, he contends that we cannot rely on the "information" to define the offense because it led to a nolo contendere plea. Supp. Br. at 7. Ortkiese cites no precedent in support of this proposition, nor could he as our case law allows the review of a charging document regardless of the means of conviction. *United States v. Arnold*, 58 F.3d 1117, 1124 n.5 (6th Cir. 1995) ("[T]he district court may, if necessary, refer to the conduct charged in the indictment entered against defendant because defendant's plea of nolo contendere has a similar legal effect as pleading guilty.") (internal quotation marks omitted); *see United States v. Armstead*, 467 F.3d 943, 949 & n.2 (6th Cir. 2006).

Second, Ortkiese argues that *Shepard* requires a judge to make explicit factual findings in the absence of a jury trial and that a defendant must assent to those findings before they can be used

to enhance his sentence. Br. at 13–14. *Shepard*, however, did not constrict the evidence available to a federal court in determining the nature of a prior conviction under *Taylor*. Instead, *Shepard* reaffirmed that a federal court faced with a non-generic state statute may turn to "charging documents filed in the court of conviction, or to recorded judicial acts of that court limiting convictions to the generic category." *Shepard*, 544 U.S. at 20; *id.* at 19 ("[T]he ACCA nowhere provides that convictions in tried and pleaded cases are to be regarded differently."). That is all that happened here. *See id.* at 24 (noting that the question is whether a "prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts equating to generic burglary"). Because the information clearly outlines that the burglary charge was for unlawful entry into a storage cottage, the district court correctly found that this fact was necessary for conviction. *See United States v. Mahon*, 444 F.3d 530, 535 (6th Cir. 2006) (holding that because the indictments clearly classified the crimes as generic burglaries, "the district court did not need to engage in further factfinding concerning the two convictions").

Third, Ortkiese contends that because *second-degree* burglary under Florida law requires the entry into a dwelling or the presence of a "human being in the structure or conveyance at the time the offender entered or remained," Fla. Stat. § 810.02(3) (1994), his conviction for *third-degree* burglary "does not meet the standard" for being a violent felony. Supp. Br. at 6. But in suggesting that a person must be present in the building, or that a weapon or violence must be used, for a burglary to be a violent felony, he adds a gloss to the statute that simply is not there. *Id.*; Br. at 12. The phrase "violent felony" encompasses *both* "burglar[ies]" and crimes that have "as an element

the use, attempted use, or threatened use of physical force against the person of another" *or* that present "serious potential risk of physical injury to another." *Taylor*, 495 U.S. at 578, 597. The Court has held that a generic burglary presents such a serious potential risk. The government thus need only prove that Ortkiese was convicted of a generic burglary (and two other violent felonies) to trigger a sentencing enhancement under the Armed Career Criminal Act. *See id.* at 588 (rejecting the idea that the Act only targeted "some special subclass of burglaries that might be especially dangerous, such as those where the offender is armed, or the building is occupied"); *United States v. Sparks*, 265 F.3d 825, 835 n.3 (9th Cir. 2001); *United States v. Sacko*, 178 F.3d 1, 3 (1st Cir. 1999) ("[A] sentencing court should look only to whether the statute of conviction contained the elements of a 'generic' burglary and should not inquire whether the specific crime committed was especially dangerous to others."); *United States v. Strahl*, 958 F.2d 980, 985 (10th Cir. 1992) ("Congress included most burglary convictions as predicate offenses even though use of physical force or threat of violence did not play a part in every burglary.").

Fourth, invoking *United States v. Day*, 465 F.3d 1262 (11th Cir. 2006), Ortkiese contends that the information relied on by the district court does not reflect the conduct for which he was convicted. *Day* is inapt, however. In that case, the information alleged that the defendant had "unlawfully enter[ed] . . . a dwelling" (*i.e.* second-degree burglary under Florida law). *Id.* at 1266. The Eleventh Circuit recognized that the defendant could not have agreed to the facts alleged in the information because he was convicted only of third-degree burglary (*i.e.* unlawfully entering an unoccupied structure other than a dwelling or an unoccupied conveyance with intent to commit an

offense therein). *Id.*; Fla. Stat. § 810.02(4). In contrast to *Day*, the information against Ortkiese alleged that he had unlawfully entered a "structure other than a dwelling, to-wit: a storage cottage," JA 204, a fact that comports with his conviction for third-degree burglary. And because Ortkiese's entry of a storage cottage was a necessary factual predicate of his state-court conviction, the district court properly relied upon the information to determine whether the conviction amounted to a generic burglary. *Cf. Arnold*, 58 F.3d at 1124 ("[A court] should limit its examination to only those charges in the indictment that are essential to the offense to which defendant entered his plea.").

C.

Ortkiese, finally, argues that the court's use of his prior offenses to enhance his sentence violates his Sixth Amendment right to a jury trial. Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), we have faced this question many times. *See, e.g.*, *United States v. Watford*, 468 F.3d 891, 915 (6th Cir. 2006); *United States v. Mahon*, 444 F.3d 530, 535–36 (6th Cir. 2006); *United States v. Hill*, 440 F.3d 292, 298–99 (6th Cir. 2006); *United States v. Barnett*, 398 F.3d 516, 524–25 (6th Cir. 2005). Each time, we have pointed out that *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Booker* continue to permit courts to do this very thing. *See id*; *see also Apprendi*, 530 U.S. at 490; *Booker*, 543 U.S. at 244. Any change on this score is for the Supreme Court, not for us, to make.

III.

For these reasons, we affirm.