ROGERS, Circuit Judge,
dissenting.
Timothy Phillips’s third-degree burglary conviction is not a violent felony under the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because the crime, narrowly defined to be the least dangerous form of felony burglary, does not pose a risk of violent confrontation comparable to that of generic burglary.
The ACCA does not count Phillips’s offense as a predicate, because the degree of risk posed by the violation of Florida’s third-degree burglary statute, in the “ordinary case,” is not “roughly similar” to the degree of risk posed by generic burglary. See Begay v. United States, 553 U.S. 137, 143, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008) (requiring degrees of risk to be “roughly similar”); James v. United States, 550 U.S. 192, 208, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (requiring comparisons between “ordinary ease[s]”). The Supreme Court has defined generic burglary under the ACCA as a crime “having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.” Taylor v. United States, 495 U.S. 575, 599, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The Florida third-degree burglary statute under which Phillips was convicted differs meaningfully from this deliberately broad definition in three respects, each of which makes the crime less risky in the ordinary case.
First, the offender must not be armed with a dangerous weapon or explosive. Fla. Stat. § 810.02(4). This element clearly decreases the potential risk of serious injury.
It does not follow from the First Circuit’s decision in Sanchez-Ramirez, 570 F.3d 75 (1st Cir.2009), that a serious potential risk still remains. The First Circuit later criticized Sanchez-Ramirez’s reasoning for making an improper logical leap from there remains a possibility of confrontation to there is a serious potential risk of confrontation:
The gist of the argument is that, as was observed in James and Sanchez-Ramirez, in each case there is a realistic possibility that a perpetrator will be interrupted and violence will ensue. But such an argument could be applied to almost any crime in which “getting caught in the act” escalates the potential for violence. We require a more fine-toothed approach.
United States v. Farrell, 672 F.3d 27, 34 (1st Cir.2012). Under a “more fine-toothed approach,” the difference in the risk of violent confrontation between burglary of an occupied structure or dwelling and burglary of an unoccupied structure is significant.
Indeed, Farrell considered the likelihood that a structure is occupied in assessing the risks posed by the commission of a non-generic burglary-like offense. In that case, the First Circuit held that a Massachusetts breaking-and-entering conviction was not a violent felony under the'ACCA’s residual clause. Id. at 36. The Farrell court emphasized that the statute included ships and vessels in the set of possible locations of the crime. Id. at 32. Because the likelihood of a person’s being present in a ship or vessel during the daytime is less than the likelihood of a person’s being present in a generic building at an unspecified time, the court concluded that “the predicate crime ... and generic burglary are insufficiently congenerous.” See id. at 34-35.
*1053 Third, Florida’s definition of “structure” is broader than that for generic burglary, in that Florida’s definition includes the curtilage of a building. It is true that, as the Supreme Court held in James, curti-lage is defined narrowly in Florida to require a fenced-in area, such that extending burglary to breaking the curtilage still risks a violent encounter; but the Florida statutory provision at issue in James, namely second-degree burglary under § 810.02(3), involved a dwelling or occupied structure. See James, 550 U.S. at 212-13, 127 S.Ct. 1586. Here the situation involves the curtilage of a categorically unoccupied building. Those third-degree burglary cases in which there is an entry into the curtilage, but not the structure itself, involve a lesser risk of a violent encounter. A miscreant spotted in a such a curtilage is more likely to be considered a mere trespasser than he is a felonious burglar, and will therefore typically incite a less violent response. And he is more likely to abscond and rapidly defuse the situation. As Justice Sealia noted with respect to the entering of the curtilage of an occupied dwelling: “The so-called ‘confrontation’ ... between a would-be burglar and a third party while the burglar is still outside the home is likely to consist of nothing more than the occupant’s yelling ‘Who’s there?’ from his window, and the burglar’s running away.” Id. at 226, 127 S.Ct. 1586 (Sealia, J., dissenting). Thus, the inclusion of the curtilage in the definition of the crime decreases the risk of violence.
Taken together, these three definitional differences decrease the degree of risk below the point where it is roughly comparable to that of generic burglary.
Our unpublished decision in United States v. Ortkiese, 208 Fed.Appx. 436, 440-41 (6th Cir.2006), is distinguishable. Ort-kiese held that third-degree burglary of a structure (rather than of just its curtilage) would be a generic burglary. Here, the Government concedes that Phillips’s offense is not a generic burglary. Moreover, Ortkiese did not discuss the other narrowing elements of the offense at issue in this case — that the offender must not be armed and that the building must not be occupied — that make this offense less dangerous than a generic burglary.
Florida’s legislature deliberately distinguishes among forms of burglary, such that each offense varies in dangerousness and culpability, and third-degree burglary is the least serious form of the offense. This meaningful and relevant organization of the state criminal code should factor into our analysis. The Supreme Court has left open the question of whether “a State’s decision to divide a generic form of conduct ... into separate, escalating crimes may make a difference under the ACCA.” Sykes v. United States, — U.S. -, 131 S.Ct. 2267, 2293, 180 L.Ed.2d 60 (2011) (Kagan, J., dissenting); see also Chambers v. United States, 555 U.S. 122, 127, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009). Because Congress did not “limit the predicate offense to some special subclass of burglaries that might be especially dangerous, such as those where the offender is armed, or the building is occupied, or the crime occurs at night,” Taylor, 495 U.S. at 588, 110 S.Ct. 2143, generic burglary encompasses various forms of burglary of varying degrees of dangerousness. As here, where a state creates a special subclass of comparatively less dangerous burglaries that do not qualify as generic burglaries, the ACCA’s residual clause should not apply.
Wdien pilfering a few stray eggs from the fenced yard of a chicken coop is considered “violent,” the term “violent” becomes unmoored from its meaning. Today’s holding is not far from that. Such a holding extends the ACCA far beyond the *1054 archetypal home invasion that Congress most likely contemplated as the characteristic burglary committed by truly violent career criminals. See id. at 581, 110 S.Ct. 2143.
The Florida legislature defined the crime of third-degree burglary in such a way that its commission presents considerably less risk of a violent confrontation than does a generic burglary. The Supreme Court has held that the residual clause only extends to “crimes that are roughly similar, in kind as well as in degree of risk posed,” to the generic crimes. Begay, 553 U.S. at 143, 128 S.Ct. 1581. Because the risk posed in the ordinary case by a Florida third-degree burglary is not roughly comparable to the risk posed in the ordinary case by a generic burglary, it follows that Phillips’s previous conviction was not for a violent felony, and the ACCA does not apply. I would accordingly reverse the sentence and remand for resen-tencing.