932 F.2d 971
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victor J. STRAIN, Defendant-Appellant.
 No. 90-3515.
 United States Court of Appeals, Seventh Circuit.
 Argued April 10, 1991.
Decided April 24, 1991.
 
 1
 Before BAUER, Chief Judge, COFFEY, Circuit Judge, and HUBERT L. WILL, Senior District Judge*.
 
 ORDER
 
 2
 On September 2, 1986, a person identifying himself as Toussaint Barrett purchased a Marlin Model 60 .22 caliber rifle, serial number 15514705, from a K-Mart store in Madison, Wisconsin. A Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms Form 4473, Firearm Transaction Record, was completed at the time of the sale. Also completed was a Madison Police Department Record of Firearms Ownership Transfer. Both forms were executed in the name of Toussaint Barrett and both identified him as the purchaser of the .22. On February 19, 1987, Madison Police Department Detective Francis McCoy and Dane County Sheriff's Department Detective Thomas Kretschman went to Apartment No. 1, 2410 Allied Drive, Madison, Wisconsin, with an arrest warrant for James Scott, Jr. The apartment was leased to a Betty Jean Love. The officers had information that Scott was staying at Love's apartment.
 
 
 3
 When the officers arrived, they were admitted to the apartment by a man who identified himself as Toussaint Barrett. In fact, the man was Victor J. Strain. The officers advised Strain that there were several felony warrants for Scott and that they were searching for him. While in the apartment, Detective Kretschman observed a .410 gauge shotgun in plain view protruding above the back of a sofa. The officers found Betty Jean Love in a bedroom. She informed Detective Kretschman that the .410 shotgun was hers and that she had purchased it from a friend, George Brown. When the detectives left, Detective Kretschman removed the .410 shotgun.
 
 
 4
 On February 26, 1987, Dane County Court Commissioner Todd E. Meurer issued an arrest warrant for Strain. The criminal complaint attached to the arrest was subscribed and sworn to by Detective McCoy. It stated that "[o]n February 19, 1987, your complainant was advised by the male identifying himself as Toussaint Barrett that the .410 gauge shotgun found by Detective Kretschman was on loan to him "from a friend." The complaint also stated that a United States Department of Justice F.B.I. criminal offense return, as well as a Chicago Police Department criminal record check, reported Strain as having a felony record and that he was charged with violating section 941.29(1) of the Wisconsin Statutes, felon in possession of a firearm. Later that same day, detectives from the Madison Police Department arrested Strain pursuant to the warrant.
 
 
 5
 On February 27, 1987, Strain called down from the jail to talk to Detective McCoy. McCoy and another detective met with Strain at the jail for about an hour and a half. Strain admitted that he had been using the identification of Toussaint Barrett for the last year and that he had found the identification in a car in Chicago. Strain was acquainted with Barrett, and assumed his identity because Barrett did not have the long criminal record that Strain has. Strain admitted that the .22 caliber rifle that he had purchased from the K-Mart was at 2410 Allied Drive. In addition, he stated that Toussaint Barrett's identification also was at the Allied Drive apartment. On February 27, 1987, Dane County Circuit Court Judge Moria Krueger issued a search warrant for 2410 Allied Drive. The Madison Police Department searched the apartment and seized evidence, including a Marlin Model 60 .22 caliber rifle, serial number 15514705, and an envelope addressed to Toussaint Barrett containing assorted documents.
 
 
 6
 On January 6, 1988, a federal grand jury returned a two-count indictment against Strain charging him with knowingly making a false statement in connection with the purchase of a firearm, and unlawful possession of a firearm. On June 11, 1990, Strain moved to have the state arrest warrant quashed and all subsequently obtained evidence suppressed on the grounds that the complaint in support of the arrest warrant contained material, reckless, or willful misrepresentations of fact. On June 27, 1990, an evidentiary hearing was held on Strain's motion. On August 16, 1990, a federal district court judge adopted a magistrate's report and recommendation, recommending that Strain's motion be denied. Strain filed a motion to reopen the evidentiary hearing, but it too was denied. Strain pleaded guilty to violating 18 U.S.C. Sec. 922(g)(1), making a false statement in connection with the purchase of a firearm, and was sentenced to a prison term of fifteen years. Pursuant to the plea agreement, the unlawful possession of a firearm charge was dropped, and Strain reserved the right to appeal any denial of his pretrial motions by the district court. He now challenges the district court's denial of his motion to reopen the evidentiary hearing on his motion to suppress, as well as the court's denial of his motion to suppress. In addition, Strain argues that the district court improperly enhanced his sentence under the Sentencing Guidelines.
 
 
 7
 In this appeal, Strain argues--as he did in his motion to have the arrest warrant quashed--that because the criminal complaint contained material misrepresentations of fact, Strain's subsequent incriminating statements regarding possession of the .22 rifle, as well as the actual seizure of the rifle, should be suppressed as fruits of a defective arrest. In particular, Strain insists that Detective McCoy gave false testimony concerning what Strain told him about the .410 gauge shotgun, and that McCoy intentionally and wilfully misrepresented the facts regarding ownership of the shotgun in the criminal complaint. As further evidence of McCoy's "deception," Strain points to new evidence not raised at the Franks hearing: that McCoy knew Strain by sight as a convicted felon and knew that he had been using the alias of Toussaint Barrett. Strain argues that the officer later denied knowing Strain when he went to Love's apartment on February 19, 1987, in order to intimidate Strain into cooperating in an investigation of a series of robberies that involved James Scott.
 
 
 8
 When a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the fourth amendment requires that a hearing be held at the defendant's request. Franks v. Delaware, 438 U.S. 154, 156 (1978). At a "Franks " hearing, the defendant bears the burden of proof by a preponderance of the evidence. Id. In the Franks hearing held here, the evidence consisted only of the testimony of Detective McCoy and Strain, the affidavit itself, and McCoy's police report. In his testimony, McCoy claimed that he did not know Victor Strain was not Toussaint Barrett when he went to Love's apartment. He stated that he did not even know Strain on February 19, 1987. McCoy described the circumstances surrounding Strain's statement that the shotgun was on loan to him from a friend, and verified the accuracy of this statement in his police report: "Toussaint then stated the gun belonged to a friend of his but that he could not give me his name." For his part, Strain heavily relied upon McCoy's police report to undermine McCoy's testimony that Strain did in fact say that the gun was on loan to him. Strain testified as to what he told Detective McCoy about the ownership of the .410 shotgun: "I explained to him that it was on loan, Betty Love's gun. On loan to her." Strain stated that at no time did he tell McCoy that the gun was on loan to Strain.
 
 
 9
 In essence, the magistrate had to choose between Strain's version of what he told McCoy about the shotgun on February 19, 1987, and McCoy's version of the same event. We accord a finding based on the court's determination of witness credibility a greater degree of deference "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Anderson v. Bessemer City, 470 U.S. 564, 575 (1985). The magistrate chose to credit McCoy over Strain, stating that "[u]nlike defendant, Det. McCoy is unimpeached and he had no self-interested motive or purpose to dissemble." Contrary to Strain's assertion that McCoy's police report was contradictory, the magistrate noted that the report stated that Strain told McCoy that the gun belonged to a friend, whom he would not identify. Betty Love told another officer that the weapon was hers. The magistrate found that "[n]either statement is inconsistent with defendant's possession of the weapon as a borrower or of his admission of that fact." Of great significance to the court was the fact that Strain had falsely assumed another person's identity and that he was a convicted felon under indictment for making a false statement. In the court's estimation, these factors severely damaged Strain's credibility. In addition, the court found Strain's testimony evasive and inconsistent. At one point during the evidentiary hearing, Strain testified that he did not know enough about the gun to talk to the detectives about it, but when questioned by the magistrate, Strain admitted that he knew enough about the weapon to provide information that it was on loan to Betty Love.
 
 
 10
 We conclude that the magistrate's report and recommendation adopted by the district court was substantially supported by the record and, therefore, not clearly erroneous. Strain failed to establish by a preponderance of the evidence the existence of a false, material statement in the complaint. He failed to present the type of evidence, required under Franks, that Detective McCoy acted intentionally or with reckless disregard for the truth. Any omissions of fact in the complaint--such as Betty Love's admission of ownership of the .410 shotgun--were not material to the issuance of a search warrant; what was material was the statement that Strain was a convicted felon and that he was in constructive possession of a firearm. Further, the district court did not abuse its discretion in denying Strain's motion to reopen the evidentiary hearing based upon new evidence that Detective McCoy knew Strain when he went to Love's apartment on February 19, 1887. Strain could have, but did not challenge McCoy's testimony at the Franks hearing that he did not know Strain's true identity. Strain's failure to raise this issue at the Franks hearing constitutes a waiver of this issue on appeal but, even if the issue had been raised at the appropriate time, Strain failed to establish that Detective McCoy had personal knowledge that Strain and Barrett were the same person.
 
 
 11
 With regard to Strain's sentence, we note that prior convictions for burglary will trigger enhancement under section 924(e) of the Sentencing Guidelines, which deals with penalties for individuals unlawfully possessing firearms who have prior "violent felony" convictions. Section 924(e)(2)(B)(ii) defines the term "violent felony" to include "burglary, arson, extortion, ... use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Strain argues that his crimes should not be considered for purposes of enhancement because they were non-violent in nature In one instance, Strain drove a get away vehicle while an accomplice broke into a store to steal typewriters; in another situation, Strain came around the front of a residence to help several other individuals carry stolen items to his car.
 
 
 12
 The United States Supreme Court rejected a similar argument in Taylor v. United States, 110 S.Ct. 2143 (1990). In Taylor, the Court examined the legislative history of section 924(e) and concluded that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." Id. at 2159. Appellate courts are not required to engage in an elaborate fact finding process to determine if the defendant's crime fits the statutory definition of "burglary." Taylor requires that we look "only to the fact of conviction and the statutory definition of the prior offense." Id. at 2160. Strain was convicted of burglary in Illinois in 1976 and 1978. Illinois defines "burglary" as follows: "A person commits burglary when without authority he knowingly enters or without authority remains within a building, house trailer, watercraft, aircraft, motor vehicle as defined in the Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft." Ill.Rev.Stat. 1985, ch. 38, para. 19-1. Strain pleaded guilty and was convicted under this statute. His crimes fit the generic definition of "burglary," and are punishable by a term of imprisonment exceeding one year. Accordingly, his prior convictions for burglary fit the definition of "violent felony" as provided in section 924(e)(1).
 
 
 13
 Strain's final argument is that his prior burglary conviction in 1976 and 1978 should not be considered for enhancement purposes because they occurred before the enactment of the Comprehensive Crime Control Act of 1984, P.L. 98-473. A sentencing court has wide discretion to consider many different factors when imposing a sentence. An important part of the Guidelines' sentencing philosophy is that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. Sec. 3577. Two of the stated goals of The Comprehensive Crime Control Act are to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. 18 U.S.C. Sec. 3553(a)(2)(B)(C). Because "[a] defendant's record of past criminal conduct is directly relevant to those purposes," U.S.S.G. Ch. 4, Pt. D, intro. comment, the trial court properly considered Strain's prior convictions in meting out his sentence.
 
 
 14
 For all of the above reasons, the conviction and sentence are
 
 
 15
 AFFIRMED.
 
 
 
 *
 Hon. Hubert L. Will, Senior District Judge for the Northern District of Illinois, sitting by designation