PICKERING, Circuit Judge,
dissenting:
The majority correctly states that the issue in this case is whether for “Sentencing Guidelines purposes, criminally negligent homicide under Texas law is equivalent to manslaughter and, therefore, an enumerated crime of violence under Guidelines § 2L1.2.” Because I am persuaded that criminally negligent homicide under Texas law is equivalent to manslaughter as set forth in Guidelines § 2L1.2, I respectfully dissent.
The majority concludes that Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), compels us to examine other authorities (including surveying the laws of all 50 states) to determine the generic contemporary definition of manslaughter. I respectfully disagree. I think all that is necessary for us to determine is what the drafters of the Guidelines meant when they used the word “manslaughter” in § 2L1.2.
The Taylor case is distinguishable from this case in two respects. First, Taylor involved a federal criminal statute, not the Guidelines. Secondly, Taylor involved determining the meaning of the word “burglary” as used in the federal criminal statute, not the word “manslaughter” as used in the Guidelines. In Taylor the petitioner’s sentence had been enhanced because of a previous conviction for burglary. Taylor, 495 U.S. at 579, 110 S.Ct. 2143. The petitioner argued that burglary as used in the federal enhancement statute should be interpreted according to the common law. Id. at 596, 110 S.Ct. 2143.
Since the common law was developed, the word “burglary” has undergone a much greater transformation in meaning than has the word “manslaughter.” “Burglary” was defined by the common law to be “the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony.” Id. at 582 n. 3, 110 S.Ct. 2143. The common and generic meaning of “burglary” today is the unlawful entry of any building, whether dwelling or business, whether in the nighttime or daytime. Id. at 598, 110 S.Ct. 2143. Some states have labeled criminal statutes involving illegal entry to automobiles, boats, booths, tents, vessels, railroad cars, and vending machines as burglary, offenses that traditionally were never considered as the crime of burglary. Id. at 599,110 S.Ct. 2143. Consequently the definition of burglary has undergone a tremendous transformation. At common law manslaughter was defined as the unlawful killing of a human being without malice aforethought. Black’s Law Dictionary still defines manslaughter as “[t]he unlawful killing of a human being without malice aforethought.” Black’s Law DiCtionaey 976 (7th ed.1999).
Over the years manslaughter was divided into involuntary and voluntary manslaughter. Generally, involuntary manslaughter has covered cases where death was not intended or foreseen, and voluntary manslaughter has included all other homicides except those that constitute murder.
I perceive the correct solution is to determine what the writers of the Guidelines understood the word “manslaughter” to mean. This was the approach taken by this court in United States v. Fry, 51 F.3d 543 (5th Cir.1995). Focusing on the intent of the Guidelines’ drafters, the court wrote that “the drafters of the guidelines clearly indicated that manslaughter was to be considered a ‘crime of violence.’ Since the commentary to section 4B1.2 makes no distinction between voluntary and involuntary manslaughter, we hold that both are included.” Id. at 546. Accordingly, it is *648 not the court’s responsibility to determine the generic meaning of manslaughter but to determine what the authors of the Guidelines intended.
Reading other sections of Sentencing Guidelines that deal with manslaughter makes it clear to me that the writers of the Guidelines understood involuntary manslaughter to include both criminally negligent and reckless conduct. Guidelines § 2A1.3 provides the base offense levels for voluntary manslaughter. Guidelines § 2A1.4 provides:

Involuntary Manslaughter

(a) Base Offense Level:
(1) 10, if the conduct was criminally negligent; or
(2) lip, if the conduct was reckless. U.S.S.G. § 2A1.4 (2002).
When the Guidelines writers included the crime of manslaughter as an enumerated crime in Guidelines § 2L1.2 subpart II, it did not differentiate between involuntary manslaughter and voluntary manslaughter. As noted, the Fifth Circuit in Fry concluded that “manslaughter” includes both “voluntary” and “involuntary manslaughter.” In fact, the parties agree that the term “manslaughter” includes both “voluntary” and' “involuntary manslaughter.” If the Guidelines writers had intended for manslaughter to be limited, they could easily have inserted the word “voluntary” in front of the word “manslaughter” or inserted a parenthetical, “ involuntary manslaughter not included.” Instead, they drew no distinctions. I see no reason for this Court to impose distinctions that the drafters did not.
The Guidelines clearly delineate involuntary manslaughter as including negligent homicide. Since “manslaughter” includes both “voluntary” and “involuntary manslaughter,” and since “involuntary manslaughter” is recognized by the Guidelines as including “negligent homicide,” our inquiry should proceed no further.
The Sentencing Guidelines were intended to make sentencing easier and simpler, not more complicated and difficult. I know of no other court that has gone to the extent to survey the statutory laws of all 50 states in order to arrive at a consensus definition in a Guidelines case. Because I conclude that neither Taylor nor the Guidelines require such a survey, and because I think the Guidelines themselves disclose the meaning intended by the Guidelines’ writers, I would affirm the sentence. Accordingly, I respectfully dissent.