OPINION OF THE COURT
William I. Mogulescu, J.
The defendant, Tony Singleton, was arraigned upon a felony complaint which charged him with criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]— *1052 a class B felony). On May 10, 1991, the People filed and served a laboratory report which indicated "no controlled substance present.” As a result, the People reduced the charge to Public Health Law § 3383 (2) — imitation controlled substances — a class A misdemeanor. By notice of motion and memorandum in support of such motion, dated June 5, 1991, and June 21, 1991, respectively, defendant moves for various forms of relief.
MOTION TO DISMISS
Defendant moves to dismiss the accusatory instrument pursuant to CPL 100.15, 100.40, 170.30 and 170.35. Defendant puts forth two arguments in support of his motion. Defendant contends that his prosecution under section 3383 of the Public Health Law is contrary to the legislative intent of that provision. Second, defendant argues that the People have failed to prove an essential element of the charge.
Public Health Law § 3383 (2) provides that, "[i]t shall be unlawful for any person to manufacture, sell or possess with the intent to sell, an imitation controlled substance.” Public Health Law § 3383 (1) (c) defines "imitation controlled substance” as:
"a substance, other than a drug for which a prescription is required pursuant to article one hundred thirty-seven of the education law, that is not a controlled substance, which by dosage unit appearance, including color, shape and size and by a representation is represented to be a controlled substance, as defined in the penal law. Evidence of representations that the substance is a controlled substance may include but is not limited to oral or written representations by the manufacturer or seller, as the case may be, about the substance with regard to:
"(i) its price, nature, use or effect as a controlled substance; or
"(ii) its packaging in a manner normally used for illicit controlled substances; or
"(iii) markings on the substance.” (Emphasis added.)
Defendant avers that his prosecution under Public Health Law § 3383 "distorts the legislative intent.” In support of this contention defendant puts forth three arguments. First, defendant argues that the plain language of the statute reveals that the law was intended to curb the sale of imitation controlled prescription drugs, of which heroin is not one. In support of *1053 this claim, defense counsel points to the definition of "manufacture” and "markings” as those terms are defined in section 3383 (1) (a) and (b). In further support of his position, defendant cites to subdivision (3) of the statute, which makes it unlawful to possess or use equipment to reproduce any identifying mark or trademark upon a substance with the intent to manufacture an imitation controlled substance. Second, defendant claims that Public Health Law § 3383 was enacted to curb the increase in overdoses associated with "look-alike” tablets. Counsel argues that in order to fall within this purported health and safety concern of the statute the People must first assert that the substance actually sold was harmful to the user. Third, defendant points to subdivision (5) of the statute as further evidence of the legislative intent to limit the sale of otherwise "legitimate” controlled substances.*
The People respond that both the language of the statute and its legislative history, as well as case law, support the appropriateness of the charge of Public Health Law § 3383.
When called upon to ascertain the meaning of a statute a court must first look to the plain meaning of the statute. (See, Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 674-675 [1988]; Matter of Daniel C., 99 AD2d 35, 41 [2d Dept 1984], affd 63 NY2d 927 [1984].) "When the meaning of a statute is clear, construction is unnecessary; in such a case, the duty of the court is to carry out the expressed legislative intent, not to read a different intent into the law by the aid of canons of construction.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 91, at 174.)
The statute in question clearly defines what is meant by an imitation controlled substance. Public Health Law § 3383 (1) (c), the provision which defines imitation controlled substance, states that an " '[limitation controlled substance’ means a substance * * * represented to be a controlled substance, as defined in the penal law.” Penal Law § 220.00 (5) in turn states that " '[controlled substance’ means any substance listed in schedule I, II, III, IV or V of section thirty-three hundred six of the public health law”. Schedule I (c) (11) of Public Health Law § 3306 lists heroin as a controlled substance. Thus, the statute under which defendant is charged *1054 clearly defines, on its face, what is meant by an imitation controlled substance, and that definition most certainly encompasses imitation heroin. The statute goes on to prohibit the "manufacturing], selling] or possessing] with the intent to sell, an imitation controlled substance.” (Public Health Law § 3383 [2].) The instant information clearly alleges that the defendant sold and also possessed with the intent to sell an imitation controlled substance. The defendant’s argument that the Legislature did not intend to criminalize the sale of imitation heroin when it enacted the statute is rejected.
While a review of the legislative history reveals that the problem the Legislature most had in mind when they enacted Public Health Law § 3383 was a proscription of the sale of substances which resembled otherwise legitimate substances, i.e., "look-alikes,” the legislative history also suggests that the Legislature was aware that the statute could also be used to criminalize the sale of imitation substances such as heroin. However, inasmuch as the statute on its face clearly proscribes the sale of imitation heroin in its definition of imitation controlled substance by reference to the Penal Law, this court is prohibited from attempting to define what was foremost in the mind of the Legislature when the statute was enacted. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 91, at 174.)
Indeed, the one reported decision interpreting Public Health Law § 3383 is consistent with this court’s reading of the statute. In People v Davis (135 Misc 2d 841 [Syracuse City Ct 1987]), defendant was alleged to possess " 'two white folded pieces of "pony pak” paper, each containing a white powdery substance, packaged exactly as the controlled substance cocaine is packaged for street sale, although the substance field tested negative for the presence of cocaine.’ ” (Supra, at 843.) In finding Public Health Law § 3383 constitutional the court held that the statute was not vague in that the definition of controlled substance was "a definition which is quite clear” (supra, at 845). The court, however, found the complaint insufficient as the People failed to adequately plead the intent element of the charge.
Defendant also argues that the information is insufficient in that the People failed to plead that the imitation substance was not introduced into commerce prior to the introduction into commerce of heroin pursuant to Public Health Law § 3383 (5). However, subdivision (5) does not appear to be an essential element of the crime and therefore need not be *1055 pleaded by the People. (See, People v Davis, 135 Misc 2d 841, supra.) Whether the defendant may use subdivision (5) to his benefit at trial is a question to be decided at a later time. Therefore, the court finds that the information sufficiently alleges each and every element of the crime charged and fully satisfies the requirements set forth in CPL 100.15 and 100.40.
Having considered the language of the statute and the facts alleged, I find that Public Health Law § 3383 clearly proscribes the conduct attributed to defendant and that the accusatory instrument is factually sufficient to establish a prima facie case. Accordingly, defendant’s motion to dismiss the accusatory instrument is denied.

 Public Health Law § 3383 (5) states: "Nothing in this section shall apply to a noncontrolled substance that was initially introduced into commerce prior to the initial introduction into commerce of the controlled substance which it is alleged to imitate.