# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2287

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　Appellee,　　　　　　　*
　　　　　　　　　　　　　　　　*　Appeal from the United States
　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　*　Northern District of Iowa.
Dennis Morris Brown,　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　Appellant.　　　　　　*

_____

Submitted: January 15, 2009
Filed: March 25, 2010

_____

Before MURPHY, COLLOTON, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

This case presents the question whether a prior conviction for delivery of a "simulated controlled substance" under Iowa law qualifies as a "felony drug offense" under a recidivism provision of the Controlled Substances Act, 21 U.S.C. § 802(44). We hold that it does not, and we therefore vacate Dennis Morris Brown's sentence and remand for resentencing.

On June 21, 2006, a grand jury indicted Brown for two counts of distributing crack cocaine within 1000 feet of a protected location, in violation of 21 U.S.C. § 860. Before trial, the government filed an information pursuant to 21 U.S.C. § 851, notifying Brown that it intended to seek increased punishment due to Brown's criminal history. The notice provided that Brown had three prior "felony drug offenses" in Iowa state court, and was therefore subject to a mandatory term of life imprisonment under 21 U.S.C. § 841(b)(1)(A). A felony drug offense is one that "is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

Brown's criminal history includes (1) a 1992 conviction for delivery of a substance that he represented to be methamphetamine but was later determined not to contain any controlled substance; (2) a 1993 conviction for delivery of cocaine; and (3) a 1993 conviction for delivery of a substance that he represented to be cocaine but was later determined not to contain any controlled substance, all three offenses in violation of Iowa Code § 204.401 (subsequently recodified at Iowa Code § 124.401). The first and third offenses involved the delivery of a "simulated controlled substance," defined under Iowa law as "a substance which is not a controlled substance but which is expressly represented to be a controlled substance, or a substance which is not a controlled substance but which is impliedly represented to be a controlled substance and . . . would lead a reasonable person to believe it to be a controlled substance." Iowa Code § 204.101(27) (1991) (recodified at Iowa Code § 124.101(27) (2007)).[1]

---

[1]The charging documents incorrectly refer to Brown's offenses as delivery of a "counterfeit" controlled substance, which is defined by Iowa law as a "a *controlled substance* which . . . bears the trademark . . . or any likeness thereof, of a

On August 22, 2006, Brown agreed in a written plea agreement to plead guilty to one count of distributing crack cocaine within 1000 feet of a protected location. The government reiterated its intention to seek a sentence of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). Brown reserved the right to challenge whether his two prior convictions for delivery of a "simulated controlled substance" qualified as "felony drug offenses" within the meaning of § 802(44). If those two convictions are not qualifying, then it is undisputed that the statutory minimum sentence for Brown is twenty years' imprisonment, based on one prior conviction for delivery of cocaine, rather than life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A).

Brown pleaded guilty, and the district court ruled that he was subject to a mandatory term of life imprisonment under § 841(b)(1)(A). The court concluded that the two offenses involving simulated controlled substances qualified as "felony drug offenses." *United States v. Brown*, No. 06-CR-1028-LRR, 2007 WL 1498472, *4 (N.D. Iowa May 21, 2007). The court reasoned that the Controlled Substances Act "similarly penalizes the distribution of controlled substances and counterfeit substances," *id.* at *3 (citing 21 U.S.C. §§ 841(a)(1), 841(a)(2)), and that "when a defendant delivers a counterfeit controlled substance, many of the dangers and harms to society that are present when 'the real deal' is delivered are also present." *Id.* The court concluded that the phrase "relating to" in § 802(44) is "very broad and encompasses a wide range of potential conduct." *Id.*

---

manufacturer, distributor, or dispenser other than the person who *in fact* manufactured, distributed, or dispensed the substance." *Id*. § 204.101(7) (1991) (emphasis added) (recodified at Iowa Code § 124.101(6) (2007)). The parties agree, however, that Brown's disputed offenses did not involve an actual controlled substance. *See* PSR ¶¶ 51, 55; *see also United States v. Brown*, No. 06-CR-1028-LRR, 2007 WL 1498472, *4 (N.D. Iowa May 21, 2007) (explaining that the convictions at issue "involved a substance that was made in imitation of a controlled substance with an intent to deceive.").

II.

On appeal, Brown asserts that his prior convictions for delivery of a simulated controlled substance under Iowa law are not convictions for a "felony drug offense" under 21 U.S.C. §§ 841(b)(1)(A) and § 802(44). There is little authority on this question. The district court here ruled that the convictions qualify; a district court in Virginia held that comparable convictions do not. *United States v. Gardner*, 534 F. Supp. 2d 655, 658-62 (W.D. Va. 2008); *cf. United States v. Latham*, No. 08-1610, 2009 WL 4927964 (6th Cir. Dec. 22, 2009) (per curiam)(holding that "[t]he very existence of these two non-binding, contradictory opinions is sufficient to establish, *ipso facto*, that any error in this case cannot be deemed 'plain' because . . . any error is not 'clear under current law'"). This court has reserved judgment on the question, *United States v. Robertson*, 474 F.3d 538, 543 & n.4 (8th Cir. 2007), and we review the district court's conclusion *de novo*.

Section 802(44) defines a felony drug offense as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." Brown's offenses were punishable by more than one year under Iowa law, and the disputed issue is whether delivering *simulated* methamphetamine or cocaine is an offense that "prohibits or restricts conduct *relating to* narcotic drugs." 21 U.S.C. § 802(44) (emphasis added).

The Controlled Substances Act ("CSA") does not define the phrase "relating to," and the government argues that the ordinary meaning is a broad one, such that simulating a sale of narcotic drugs is conduct relating to narcotic drugs. In the context of preemption under the Airline Deregulation Act, the Supreme Court stated that "relating to" carries a "broad" meaning – "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with."

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting *Black's Law Dictionary* 1158 (5th ed. 1979)). This court has agreed that the phrase "relating to" has a "broad ordinary meaning," even in the criminal context, when construing a sentencing enhancement for prior offenses "relating to . . . abusive sexual conduct involving a minor." *United States v. Weis*, 487 F.3d 1148, 1152 (8th Cir. 2007) (internal quotation omitted). This breadth has led our court and others to hold that several offenses – all involving actual narcotics – are covered by the definition of "felony drug offense" as one that prohibits or restricts conduct "relating to narcotic drugs." *See United States v. Millard*, 139 F.3d 1200, 1209 (8th Cir. 1998) (holding that a prior conviction for "sponsoring a gathering with the knowledge that a controlled substance would be distributed" qualified as a felony drug offense because it contained an "element of mental culpability directly related to a drug crime"); *United States v. Curry*, 404 F.3d 316, 319-20 (5th Cir. 2005) (per curiam) (holding that § 802(44) "sweeps broadly enough to include even strict liability offenses" like possession of marijuana in a penal institution); *United States v. Spikes*, 158 F.3d 913, 932 (6th Cir. 1998) (holding that "relating to" is an "expansive term," and thus "the statutory phrase 'felony drug offense' clearly . . . encompasses drug offenses that involve the simple possession of drugs"); *United States v. Sandle*, 123 F.3d 809, 812 (5th Cir. 1997) (holding that an offense for simple cocaine possession without any additional intent element qualified as a "felony drug offense").

The plain language alone, however, is not sufficient to resolve this case. Even a broad phrase has limits, and our analysis should not stop with the words "relating to" in isolation, for that "would ignore the rule that, because statutes are not read as a collection of isolated phrases, [a] word in a statute may or may not extend to the outer limits of its definitional possibilities." *Abuelhawa v. United States*, 129 S. Ct. 2102, 2105 (2009) (internal citation and quotation omitted). We must consider the phrase "relating to narcotic drugs" in context. *See Fitzgerald v. Barnstable Sch. Comm.*, 129 S. Ct. 788, 794 (2009).

Several considerations lead us to conclude that an offense involving only simulated controlled substances is not an offense that prohibits or restricts conduct relating to narcotic drugs within the meaning of § 802(44). To start, the sentencing enhancement appears in a statute that is concerned entirely with the regulation of actual controlled substances. Congress declared in the CSA that "[t]he illegal importation, manufacture, distribution, and possession and improper use of *controlled substances* have a substantial and detrimental effect on the health and general welfare of the American people," 21 U.S.C. § 801(2) (emphasis added), and found that federal control over domestic and foreign traffic of *controlled substances* was essential. *Id.* § 801(5), (7) (emphasis added). While the district court is correct that the CSA penalizes offenses involving counterfeit substances (i.e., actual controlled substances that bear an unauthorized trademark, *id.* § 802(7)), never has Congress regulated simulated or look-alike controlled substances. *See United States v. Sampson*, 140 F.3d 585, 589 (4th Cir. 1998). A reasonable legislator contemplating a sentence enhancement based on prior offenses "relating to narcotic drugs," in a statute directed exclusively to regulating the traffic of actual narcotic drugs, seems likely to have understood that the class of offenses triggering the enhancement likewise would involve actual narcotic drugs.

The history of the statute supports this inference. When the CSA was first enacted in 1970, the prior convictions that triggered enhanced punishment for repeat offenders were limited to convictions for federal drug offenses, namely, "convictions . . . punishable under this paragraph" (i.e., a conviction for manufacturing or trafficking a controlled substance) or felonies "under any other provision of this title [i.e., title II] or title III or other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances." *See Comprehensive Drug Abuse Prevention and Control Act of 1970*, Pub. L. No. 91-513, § 401, 84 Stat. 1236, 1261 (1970); *see also United States v. Gates*, 807 F.2d 1075, 1082 (D.C. Cir. 1986); *United States v. Johnson*, 506 F.2d 305, 307 (7th Cir. 1974). These offenses all involved actual narcotic drugs.

In 1984, Congress amended this language to include prior state and foreign felony drug convictions by inserting the italicized language into the existing statute: "under any other provision of this title or title III or other law of *a State,* the United States, *or a foreign country* relating to narcotic drugs, marihuana, or depressant or stimulant substances." *Crime Control Act of 1984*, Pub. L. No. 98-473, § 502, 98 Stat. 1837, 2068 (1984) (emphasis added). The relevant legislative history explains that under pre-1984 law, the sentence enhancement was "available only in the case of a prior Federal felony drug conviction," but that the 1984 amendment "would permit prior State and foreign felony drug convictions to be used for this purpose as well." S. Rep. No. 98-225, at 258-59 (1984). We think the more natural inference for a reasonable legislator in 1984 is that the amendment expanded the enhancement to include state and foreign convictions of the same type as those previously covered under federal law, namely, convictions for offenses involving actual controlled substances. This conclusion is consistent with the use of the shorthand term "felony *drug* convictions" in the legislative history to summarize criminal provisions "relating to" narcotic drugs and other controlled substances.

In 1988, Congress for the first time added the term "felony drug offense" to 21 U.S.C. § 841(b)(1)(A), defining it as "an offense that is a felony under any provision of this title or any other Federal law that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances or a felony under any law of a State or a foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances." *See* Pub. L. No. 100-690, § 6452(a)(2), 1032 Stat. 4181, 4371 (1988). There is no indication that this change expanded the scope of the enhancement provision; if anything the plain meaning of the defined term "*drug* offense" implies the involvement of actual drugs. *Cf. Johnson v. United States*, No. 08-6925, 2010 WL 693687, at \*6 (U.S. Mar. 2, 2010) (holding that "in the context of a statutory definition of "*violent* felony," the phrase 'physical force' means *violent* force."). In 1994, Congress placed the current definition of "felony drug offense" in the "Definitions" section of the CSA, 21 U.S.C.

§ 802, where it remains today.  *See* Pub. L. No. 103-322, § 90105(d), 108 Stat. 1796, 1987-88 (1994).

The government urges that distributing simulated narcotic drugs in violation of Iowa law is an offense that prohibits or restricts conduct "relating to narcotic drugs," because one purpose of the Iowa statute is to discourage people from involvement in the actual narcotics trade.  By way of example, the government observes that in this case, Brown used funds obtained from the sale of a simulated controlled substance to facilitate trade in actual drugs.  To the extent this argument rests on the facts of Brown's offense conduct, we reject it, for there is no indication in the text or history of the federal statute that a particular state offense might sometimes count toward the sentencing enhancement and sometimes not, depending on the facts of the case.  *Cf. Taylor v. United States*, 495 U.S. 575, 601-02 (1990).  Drug traffickers may undertake a variety of crimes to facilitate their drug trade – theft, burglary, robbery, or fraud among them –  but the factual nexus between a non-drug offense and drug trafficking *in a particular case* is insufficient to establish that the non-drug offense is "an offense" that restricts "conduct relating to narcotic drugs" within the meaning of § 802(44).

As the dissent points out, there is some overlap in purpose between the Iowa statute, viewed categorically, and the CSA, in that the prohibition on simulated controlled substances may be designed in part to discourage actual drug abuse and drug profiteering.  *See People v. Hill*, 8 Cal. Rptr. 123, 128 n.3 (Cal. Dist. Ct. App. 1992).  There may be good policy reasons to prohibit the sale of simulated controlled substances as part of an effort to combat actual drug trafficking and drug abuse.  The fact remains, however, that a person may violate the Iowa statute without ever possessing, distributing, or using a controlled substance and without having any involvement whatsoever with an actual narcotic drug.  The question here is whether, for purposes of punishing recidivists under an actual drug trafficking statute, Congress expanded the meaning of "felony drug offense" to include prior offenses that involve

no drugs. When the statutory definition is considered in the context of the defined term itself and the drafting history, we think not.

"After seizing everything from which aid can be derived," *Smith v. United States*, 508 U.S. 223, 239 (1993) (internal quotations and brackets omitted), we believe the better reading of § 802(44) is that offenses involving simulated controlled substances are not offenses that prohibit or restrict "conduct relating to narcotic drugs." But if that conclusion is not clear, then the most that we might say for the government's position is that the statute remains ambiguous. That circumstance would call for invocation of the rule of lenity and a narrower construction of the statute, leading us to the same holding. *See United States v. Santos*, 128 S. Ct. 2020, 2025 (2008).

For the foregoing reasons, we conclude that Brown's convictions for delivering simulated controlled substances, in violation of Iowa Code § 204.401 (recodified at § 124.404), do not qualify as "felony drug offenses" within the meaning of 21 U.S.C. § 802(44). As such, Brown is not subject to a mandatory term of life imprisonment under 21 U.S.C. § 841(b)(1)(A). We therefore vacate Brown's sentence and remand the case for further proceedings. Brown's motion for leave to file a *pro se* supplemental brief is denied. *See United States v. Martin*, 59 F.3d 767, 768 n.2 (8th Cir. 1995).

SHEPHERD, Circuit Judge, dissenting.

Because I believe that Brown's 1992 Iowa conviction for delivery of simulated methamphetamine and his 1993 Iowa conviction for delivery of simulated cocaine are "felony drug offense[s]" under 21 U.S.C. § 802(44), I respectfully dissent.

Because Brown pled guilty to distributing crack cocaine within 1000 feet of a protected location in violation of 21 U.S.C. § 860(a), he is subject to a mandatory term

of life imprisonment if he has two prior "felony drug offense[s]" within the meaning of section 802(44). 21 U.S.C. § 841(b)(1)(A). The term "'[f]elony drug offense' [in § 802(44)] is defined *broadly*." United States v. Coleman, 556 F.3d 851, 852 (8th Cir. 2009) (emphasis added); see also United States v. Burdock, No. 09-1358, 2009 WL 4419931, at *1 (8th Cir. Dec. 4, 2009) (unpublished) (same). Specifically, at issue here is whether the Iowa offense of delivery of simulated controlled substances "prohibits or restricts conduct *relating to* narcotic drugs." 21 U.S.C. § 802(44) (emphasis added). Interpreting another statutory recidivism enhancement,[2] this court observed:

> We must assume that Congress chose the words "relating to" for a purpose. As the Supreme Court said in another context in [Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992)], "The ordinary meaning of these words . . . is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' Black's Law Dictionary 1158 (5th ed. 1979) . . . ."

United States v. Stults, 575 F.3d 834, 846 (8th Cir. 2009), cert. denied, 2010 WL 251487 (2010) (quoting United States v. Hubbard, 480 F.3d 341, 347 (5th Cir. 2007)); see also United States v. Sonnenberg, 556 F.3d 667, 671 (8th Cir. 2009)[3] (same).

_____

[2] 18 U.S.C. § 2252(b)(2) (requiring a mandatory minimum sentence of 10 years and maximum sentence of 20 years if a defendant has a prior conviction under state law "*relating to* aggravated sexual abuse, sexual abuse, or abusive conduct involving a minor ward" (emphasis added)).

[3] Sonnenberg involved 18 U.S.C. § 2252(b)(1). Sonnenberg, 556 F.3d at 669-71. Section 2252(b)(1) imposes a mandatory minimum sentence of 15 years and maximum sentence of 40 years where a defendant "has a prior conviction . . . under the laws of any State *relating to* aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." 18 U.S.C. § 2252(b)(1) (emphasis added).

"[Brown's] prior conviction[s], then, must stand *in some relation to*" narcotic drugs in order to constitute felony drug offenses within the meaning of section 802(44). See Sonnenberg, 556 F.3d at 671 (emphasis added).

## I. Categorical Approach

"To determine whether [Brown's] prior offense[s] qualif[y] as . . . predicate offense[s] for the purpose of a sentence enhancement, federal courts apply a categorical approach." Id. at 669-70; see Taylor v. United States, 495 U.S. 575, 600 (1990) (outlining the categorical approach). The categorical approach requires that "the sentencing court look[] to the fact of conviction and the statutory definition of the prior offense and determine[] whether the full range of conduct encompassed by the state statute qualifies to enhance the sentence." Sonnenberg, 556 F.3d at 670; see Taylor, 495 U.S. at 600.

Brown's 1992 and 1993 convictions for delivery of simulated controlled substances were under chapter 204 of the Iowa Code, entitled "Uniform Controlled Substances Act" (UCSA), §§ 204.101-602 (recodified at chapter 124). As originally enacted in 1971, the UCSA addressed only actual controlled substances and counterfeit controlled substances. See 1971 Iowa Acts 305-07, 318-19. However, in 1982, the Iowa General Assembly extended the UCSA's reach to simulated controlled substances. See 1982 Iowa Acts 245-48.

Specifically, Brown violated Iowa Code section 204.401(1) which prohibits the delivery of controlled substances, counterfeit substances, and simulated controlled substances. Iowa Code § 204.401(1)[4] (recodified at Iowa Code §

---

[4]The full text of section 204.401(1) provides:

Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with the intent to manufacture or

124.401(1)).  The term "simulated controlled substance" is defined by Iowa Code section 204.101(27) (recodified at Iowa Code § 124.101(27)):

> "*Simulated controlled substance*" means a substance which is not a controlled substance but which is expressly represented to be a controlled substance, or a substance which is not a controlled substance but which is impliedly represented to be a controlled substance and which because of its nature, packaging, or appearance would lead a reasonable person to believe it to be a controlled substance.

Id.  Therefore,

> [a] substance is a simulated controlled substance if it is not a controlled substance and: (1) it is expressly represented as a controlled substance; or (2) it is impliedly represented as a controlled substance and, because of its nature, packaging or appearance, a reasonable person would believe the substance is a controlled substance.

State v. Henderson, 478 N.W.2d 626, 629 (Iowa 1991) (citing Iowa Code § 204.101(27)).

Admittedly, Brown's prior convictions did not involve delivery of *actual* narcotics, specifically *actual* methamphetamine and cocaine.  However, his convictions were in violation of the UCSA, the same act which prohibits the delivery of *actual* narcotics.

_____

deliver, a controlled substance, a counterfeit substance, or a simulated controlled substance, or to act with, enter into a common scheme or design with, or conspire with one or more other persons to manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance, a counterfeit substance, or a simulated controlled substance.

Iowa Code § 204.401(1).

-12-

Moreover, Brown delivered substances that were either: (1) "expressly represented to be [actual methamphetamine and cocaine]" or (2) "impliedly represented to be [actual methamphetamine and cocaine] and which because of [their] nature, packaging, or appearance . . . a reasonable person [would] . . . believe to be [actual methamphetamine and cocaine]." See Iowa Code § 204.101(27); see also Henderson, 478 N.W.2d at 629. As such, Brown's delivery of simulated methamphetamine and cocaine convictions certainly "stand in some relation to" narcotic drugs. See Sonnenberg, 556 F.3d at 671; see also United States v. Wheeler, Nos. 97-4426, 97-4475, 1998 WL 416704, at *2 (4th Cir. July 22, 1998) (unpublished) (holding that a prior New Jersey conviction for possession of drug paraphernalia with intent to deliver was a felony drug offense).

## II. Purpose Analysis

Congress enacted the Federal Controlled Substances Act (CSA) in light of the "substantial and detrimental effect" of "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances . . . on the health and general welfare of the American people." 21 U.S.C. § 801(2). Viewed categorically, the purpose of Iowa's statutory prohibition on the delivery of simulated controlled substances aligns with that of the CSA.

"[T]he Drug Enforcement Administration considers that the distribution and sale of imitation controlled substances encourages and contributes to drug abuse and drug profiteering. The problem is one more facet of the nationwide drug abuse problem." People v. Hill, 8 Cal. Rptr. 2d 123, 128 n.3 (Cal. Dist. Ct. App. 1992) (quotation omitted). And, although I agree with the majority that the facts underlying Brown's simulated controlled substance crimes are not relevant under the categorical approach, ante at 8, the close relationship between controlled substance offenses and simulated controlled substance offenses is beyond dispute as demonstrated here by Brown's 1993 Iowa conviction for delivery of actual cocaine.

Moreover, beyond the public health concern associated with noncontrolled substances *themselves*,[5] simulated controlled substance crimes are aimed at illicit drug traffic.  As the Iowa Supreme Court observed, "Delivery of a simulated controlled substance is not a consumer fraud offense." State v. Freeman, 450 N.W.2d 826, 828 (Iowa 1990).  Rather, as the Hill Court stated:

> The [California] Uniform Controlled Substances Act penalizes in-lieu sales, not because they involve fraud against the buyer, but because they promote drug trafficking and its attendant dangers.  The [California] Imitation Controlled Substances Act has a similar purpose.  It discourages the use and proliferation of counterfeit drugs which . . . have become part of the drug trafficking culture, encourage and contribute to drug abuse and profiteering, and expose users to overdoses on the drugs which they imitate.  The interests being protected are substantially the same.

8 Cal. Rptr. 2d at 129 (citations omitted).  Similarly, in rejecting a constitutional challenge to a Florida Statute rendering "[i]t . . . unlawful for any person to agree, consent, or in any manner offer to unlawfully sell to any person a controlled substance . . . and then sell to such person any other substance in lieu of such controlled substance[,]" Fla. Stat. § 817.563, the Florida Supreme Court observed:

---

[5]See, e.g., Wash. Rev. Code § 69.52.010 ("The use of imitation controlled substances is responsible for a growing number of injuries and deaths, and the legislature hereby declares that this chapter is necessary for the protection and preservation of the public health and safety."); Hill, 8 Cal Rptr. 2d at 129 (providing that the California Imitation Controlled Substances Act "discourages the use and proliferation of counterfeit drugs which can themselves be dangerous"); People v. Singleton, 574 N.Y.S.2d 631, 632 (N.Y. Crim. Ct. 1991) ("[A] review of the legislative history reveals that the problem the Legislature most had in mind when they enacted [N.Y. Pub. Health § 3383, rendering it "unlawful for any person to manufacture, sell or possess with the intent to sell, an imitation controlled substance,"] was a proscription of the sale of substances which resembled otherwise legitimate substances, i.e., 'look-alikes[.]'").

> The legislature, in enacting section 817.563, was not concerned with protecting persons illegally purchasing controlled substances from the danger of being sold bogus controlled substances. . . .  It seems clear to us that section 817.563 is not a fraud statute; it is not designed to protect illegal drug users and dealers from fraudulent representations by other dealers.  We find that the statute is merely a part of the law of this state pertaining to drug abuse prevention . . . .

State v. Bussey, 464 So.2d 1141, 1143 (Fla. 1985).  Because both the Iowa statute prohibiting the delivery of simulated controlled substances and the CSA seek to protect the American people from the dangers of the illegal distribution of actual controlled substances, there is substantial overlap in the purpose of the Iowa statute and the CSA.

## III. Conclusion

In sum, both the statutory definition of Brown's prior simulated controlled substance offenses and the purpose of criminalizing involvement with such substances demonstrate that simulated controlled substance crimes constitute "felony drugs offense[s]" within the meaning of section 802(44).  Therefore, I would hold that Brown's convictions for delivery of simulated controlled substances in violation of section 204.401 of the Code of Iowa categorically qualify as "felony drug offense[s]" under 21 U.S.C. § 802(44).[6]  As these two prior convictions coupled with Brown's conceded felony drug offense (his prior Iowa conviction for delivery of cocaine) subjects him to a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A), I would affirm Brown's sentence.

_____

_____

[6]As to the majority's conclusion that any ambiguity in the statute requires resolution in Brown's favor under the rule of lenity, "[w]e do not resort to the rule of lenity where, as here, we can otherwise resolve the ambiguity of the statute." Bernitt v. Martinez, 432 F.3d 868, 869 (8th Cir. 2005) (per curiam).