SHEPHERD, Circuit Judge,
dissenting.
Because I believe that Brown’s 1992 Iowa conviction for delivery of simulated methamphetamine and his 1993 Iowa conviction for delivery of simulated cocaine are “felony drug offense[s]” under 21 U.S.C. § 802(44), I respectfully dissent.
Because Brown pled guilty to distributing crack cocaine within 1000 feet of a protected location in violation of 21 U.S.C. § 860(a), he is subject to a mandatory term of life imprisonment if he has two prior “felony drug offensefs]” within the meaning of section 802(44). 21 U.S.C. § 841(b)(1)(A). The term “‘[f]elony drug offense’ [in § 802(44)] is defined broadly.” United States v. Coleman, 556 F.3d 851, 852 (8th Cir.2009) (emphasis added); see also United States v. Burdock, No. 09-1358, 2009 WL 4419931, at *1 (8th Cir. Dec.4, 2009) (unpublished) (same). Specifically, at issue here is whether the Iowa offense of delivery of simulated controlled substances “prohibits or restricts conduct relating to narcotic drugs.” 21 U.S.C. § 802(44) (emphasis added). Interpreting another statutory recidivism enhancement,[2] this court observed:
We must assume that Congress chose the words “relating to” for a purpose. As the Supreme Court said in another context in [Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)], “The or *1019 dinary meaning of these words ... is a broad one — ‘to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,’ Black’s Law Dictionary 1158 (5th ed.1979)....”
United States v. Stults, 575 F.3d 834, 846 (8th Cir.2009), cert. denied, — U.S. -, 130 S.Ct. 1309, — L.Ed.2d -, 2010 WL 251487 (2010) (quoting United States v. Hubbard, 480 F.3d 341, 347 (5th Cir.2007)); see also United States v. Sonnenberg, 556 F.3d 667, 671 (8th Cir.2009)[3] (same). “[Brown’s] prior eonviction[s], then, must stand in some relation to ” narcotic drugs in order to constitute felony drug offenses within the meaning of section 802(44). See Sonnenberg, 556 F.3d at 671 (emphasis added).
I. Categorical Approach
“To determine whether [Brown’s] prior offense[s] qualif[y] as ... predicate offense[s] for the purpose of a sentence enhancement, federal courts apply a categorical approach.” Id. at 669-70; see Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (outlining the categorical approach). The categorical approach requires that “the sentencing court look[ ] to the fact of conviction and the statutory definition of the prior offense and determinen whether the full range of conduct encompassed by the state statute qualifies to enhance the sentence.” Sonnenberg, 556 F.3d at 670; see Taylor, 495 U.S. at 600, 110 S.Ct. 2143.
Brown’s 1992 and 1993 convictions for delivery of simulated controlled substances were under chapter 204 of the Iowa Code, entitled “Uniform Controlled Substances Act” (UCSA), §§ 204.101-602 (recodified at chapter 124). As originally enacted in 1971, the UCSA addressed only actual controlled substances and counterfeit controlled substances. See 1971 Iowa Acts 305-07, 318-19. However, in 1982, the Iowa General Assembly extended the UCSA’s reach to simulated controlled substances. See 1982 Iowa Acts 245-48.
Specifically, Brown violated Iowa Code section 204.401(1) which prohibits the delivery of controlled substances, counterfeit substances, and simulated controlled substances. Iowa Code § 204.401(1)[4] (recodified at Iowa Code § 124.401(1)). The term “simulated controlled substance” is defined by Iowa Code section 204.101(27) (recodified at Iowa Code § 124.101(27)):
“Simulated controlled substance ” means a substance which is not a controlled substance but which is expressly represented to be a controlled substance, or a substance which is not a controlled substance but which is impliedly represented to be a controlled substance and which because of its nature, packaging, or appearance would lead a *1020 reasonable person to believe it to be a controlled substance.
Id. Therefore,
[a] substance is a simulated controlled substance if it is not a controlled substance and: (1) it is expressly represented as a controlled substance; or (2) it is impliedly represented as a controlled substance and, because of its nature, packaging or appearance, a reasonable person would believe the substance is a controlled substance.
State v. Henderson, 478 N.W.2d 626, 629 (Iowa 1991) (citing Iowa Code § 204.101(27)).
Admittedly, Brown’s prior convictions did not involve delivery of actual narcotics, specifically actual methamphetamine and cocaine. However, his convictions were in violation of the UCSA, the same act which prohibits the delivery of actual narcotics.
Moreover, Brown delivered substances that were either: (1) “expressly represented to be [actual methamphetamine and cocaine]” or (2) “impliedly represented to be [actual methamphetamine and cocaine] and which because of [their] nature, packaging, or appearance ... a reasonable person [would] ... believe to be [actual methamphetamine and cocaine].” See Iowa Code § 204.101(27); see also Henderson, 478 N.W.2d at 629. As such, Brown’s delivery of simulated methamphetamine and cocaine convictions certainly “stand in some relation to” narcotic drugs. See Sonnenberg, 556 F.3d at 671; see also United States v. Wheeler, Nos. 97-4426, 97-4475, 1998 WL 416704, at *2 (4th Cir. July 22, 1998) (unpublished) (holding that a prior New Jersey conviction for possession of drug paraphernalia with intent to deliver was a felony drug offense).
II. Purpose Analysis
Congress enacted the Federal Controlled Substances Act (CSA) in light of the “substantial and detrimental effect” of “[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances ... on the health and general welfare of the American people.” 21 U.S.C. § 801(2). Viewed categorically, the purpose of Iowa’s statutory prohibition on the delivery of simulated controlled substances aligns with that of the CSA.
“[T]he Drug Enforcement Administration considers that the distribution and sale of imitation controlled substances encourages and contributes to drug abuse and drug profiteering. The problem is one more facet of the nationwide drug abuse problem.” People v. Hill, 6 Cal.App.4th 33, 8 Cal.Rptr.2d 123, 128 n. 3 (1992) (quotation omitted). And, although I agree with the majority that the facts underlying Brown’s simulated controlled substance crimes are not relevant under the categorical approach, ante at 8, the close relationship between controlled substance offenses and simulated controlled substance offenses is beyond dispute as demonstrated here by Brown’s 1993 Iowa conviction for delivery of actual cocaine.
Moreover, beyond the public health concern associated with noncontrolled substances themselves,[5] simulated controlled *1021 substance crimes are aimed at illicit drug traffic. As the Iowa Supreme Court observed, “Delivery of a simulated controlled substance is not a consumer fraud offense.” State v. Freeman, 450 N.W.2d 826, 828 (Iowa 1990). Rather, as the Hill Court stated:
The [California] Uniform Controlled Substances Act penalizes in-lieu sales, not because they involve fraud against the buyer, but because they promote drug trafficking and its attendant dangers. The [California] Imitation Controlled Substances Act has a similar purpose. It discourages the use and proliferation of counterfeit drugs which ... have become part of the drug trafficking culture, encourage and contribute to drug abuse and profiteering, and expose users to overdoses on the drugs which they imitate. The interests being protected are substantially the same.
8 Cal.Rptr.2d at 129 (citations omitted). Similarly, in rejecting a constitutional challenge to a Florida Statute rendering “[i]t ... unlawful for any person to agree, consent, or in any manner offer to unlawfully sell to any person a controlled substance ... and then sell to such person any other substance in lieu of such controlled substance[,]” Fla. Stat. § 817.563, the Florida Supreme Court observed:
The legislature, in enacting section 817.563, was not concerned with protecting persons illegally purchasing controlled substances from the danger of being sold bogus controlled substances .... It seems clear to us that section 817.563 is not a fraud statute; it is not designed to protect illegal drug users and dealers from fraudulent representations by other dealers. We find that the statute is merely a part of the law of this state pertaining to drug abuse prevention....
State v. Bussey, 463 So.2d 1141, 1143 (Fla.1985). Because both the Iowa statute prohibiting the delivery of simulated controlled substances and the CSA seek to protect the American people from the dangers of the illegal distribution of actual controlled substances, there is substantial overlap in the purpose of the Iowa statute and the CSA.
III. Conclusion
In sum, both the statutory definition of Brown’s prior simulated controlled substance offenses and the purpose of criminalizing involvement with such substances demonstrate that simulated controlled substance crimes constitute “felony drugs offense[s]” within the meaning of section 802(44). Therefore, I would hold that Brown’s convictions for delivery of simulated controlled substances in violation of section 204.401 of the Code of Iowa categorically qualify as “felony drug offense[s]” under 21 U.S.C. § 802(44).[6] As these two prior convictions coupled with Brown’s conceded felony drug offense (his prior Iowa conviction for delivery of cocaine) subjects him to a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A), I would affirm Brown’s sentence.

. 18 U.S.C. § 2252(b)(2) (requiring a mandatory minimum sentence of 10 years and maximum sentence of 20 years if a defendant has a prior conviction under state law “relating to aggravated sexual abuse, sexual abuse, or abusive conduct involving a minor ward” (emphasis added)).

. Sonnenberg involved 18 U.S.C. § 2252(b)(1). Sonnenberg, 556 F.3d at 669-71. Section 2252(b)(1) imposes a mandatory minimum sentence of 15 years and maximum sentence of 40 years where a defendant "has a prior conviction ... under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward.” 18 U.S.C. § 2252(b)(1) (emphasis added).

. The full text of section 204.401(1) provides:
Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with the intent to manufacture or deliver, a controlled substance, a counterfeit substance, or a simulated controlled substance, or to act with, enter into a common scheme or design with, or conspire with one or more other persons to manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance, a counterfeit substance, or a simulated controlled substance.
Iowa Code § 204.401(1).

. See, e.g., Wash. Rev.Code § 69.52.010 (“The use of imitation controlled substances is responsible for a growing number of injuries and deaths, and the legislature hereby declares that this chapter is necessary for the protection and preservation of the public health and safety.”); Hill, 8 Cal.Rptr.2d at 129 (providing that the California Imitation Controlled Substances Act “discourages the use and proliferation of counterfeit drugs which can themselves be dangerous”); People v. Singleton, 151 Misc.2d 1051, 574 N.Y.S.2d 631, 632 (N.Y.Crim.Ct.1991) ("[A] review of the legislative history reveals that the problem the Legislature most had in 'mind when they enacted [N.Y. Pub. Health § 3383”, rendering it “unlawful for any person to manufacture, sell or possess with the intent to sell, an imitation controlled substance,”] was a proscription of the sale of substances which re *1021 sembled otherwise legitimate substances, i.e., "look-a-likes [.] ”).

. As to the majority’s conclusion that any ambiguity in the statute requires resolution in Brown’s favor under the rule of lenity, “[w]e do not resort to the rule of lenity where, as here, we can otherwise resolve the ambiguity of the statute.” Bernitt v. Martinez, 432 F.3d 868, 869 (8th Cir.2005) (per curiam).